# VIVIAN et al. v. ROBERTSON, Appellant.

## Division One, June 20, 1903.

1. **Pleading: CONSTRUCTION ON APPEAL.** The rule that a pleading is to be construed most strongly against the pleader will not be applied in the appellate court when the supposed defect was not called to the attention of the trial court. But where no objection is made at the trial to the effect that the petition does not state a cause of action, it will, on appeal, be held to be good if its statements are susceptible of a construction that will constitute a cause of action.

2. **Sales: INCREASE IN CONTRACT PRICE: NOTICE: RISE IN MARKET.** A contract for the sale of certain attachments for a corn planter extended over several years, and provided for their sale to defendant at $1.75 per set, payable in July of each year, the price "to be increased or diminished in proportion to the rise or fall in the price of the material out of which they were made when that rise or fall is as much as ten per cent." *Held*, first, that defendant can not refuse to pay for the machines because he ordered them before he received notice that there would be an increase in the price, for he was not entitled to such notice; second, the contract regulated the price of the manufactured article, not by what was paid for the material from which it was made, but by the market price of that material, and hence defendant can not escape payment by the fact that the machines he bought were made of material on hand before the market value of material increased ten per cent.

3. **Counterclaim: FINDING OF FACTS BY TRIAL COURT.** Where there is a conflict in the evidence the trial court's finding of facts, either on plaintiff's demand or defendant's counterclaim, is not reviewable on appeal.

4. **Contracts: TERMINATION BY EITHER PARTY.** Where the contract for the sale to defendant of plaintiff's patent machines expressly provides that if either party shall violate its terms the other at his option may terminate it by giving written notice, a refusal by defendant to pay for one installment of machines at the price fixed by the contract unless plaintiff accepts his wrongful interpretation of that contract, or his refusal to pay what he acknowledges to be due until certain changes are made in the contract, justify plaintiff in terminating it.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Geo. Robertson* for appellant.

(1) The defendant should have been charged $1.75 per set for all orders prior to April 17, 1899. (2) Plaintiffs could not raise the price per set until they had given notice of the change in the price of material. (3) The defendant had a right to damages for a breach of the contract for the 102 sets sold by plaintiffs and distributed in Missouri by the Mansur & Tebbetts Implement Company. (4) Under the second counterclaim the defendant was entitled to damages. 1 Sedgwick on Damages, 181; Walker on Patents, sec. 563; Suffolk Mfg. Co. v. Hayden, 70 U. S. 315; Manter v. Truesdale, 57 Mo. App. 435; Peltz v. Eichele, 60 Mo. 171; Goldman v. Woolf, 6 Mo. App. 490; Seaberry v. Amende, 152 U. S. 561.

*James A. Yantis* and *J. S. McIntyre* for respondents.

(1) The sales were not made by plaintiffs when the orders for the goods were made. They were made when the goods were set aside and delivered to the defendant. Boot & Shoe Co. v. Bain, 46 Mo. App. 581; Ober v. Carson, 62 Mo. 209; Nance v. Metcalf, 19 Mo. App. 183; Grocer Co. v. Clements, 69 Mo. App. 446; Collins v. Lumber Co., 128 Mo. 451; Scharff v. Meyer, 133 Mo. 428; Kerwin v. Doran, 29 Mo. App. 397; Drug Co. v. McMahan, 50 Mo. App. 18. The facts in this matter are practically agreed to. "All future orders are to be purchased from party of first part at their factory," etc. The orders for many of the attachments were sent before the notice of the rise was given, but the orders were accepted and the goods delivered under a notification that the advanced price must be paid. (2) The action of the trial court in finding the issues of the second counterclaim in favor of plaintiff was right because there was an unquestionable violation of the terms of the contract upon the part of defendant.

and by the terms of the contract plaintiffs were empowered to terminate it for such cause, and they exercised the power. For the convenience of the court we classify our authorities under heads: First. Those wherein the power to terminate is given in the contract: Rouse, Hazard & Co. v. Western Wheel Works, 169 Ill. 536; Wilkinson v. Blount Mfg. Co., 169 Mass. 374; Morrissey v. Broomal, 37 Neb. 766; Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 325; Gratz v. Railroad, 165 Mo. 211; Blaine v. Knapp & Co., 140 Mo. 250; Ford v. Dyer, 148 Mo. 540; Wing v. Clock Co., 102 N. Y. 531; Lawlor v. Metal Co., 53 N. Y. Supp. 950; Taylor v. Trustees, etc., 43 Atl. 613; Van Tuyl v. Young, 23 Ohio Cir. Ct. Rep. 15; Purifier Co. v. Wolf, 28 Fed. 814; 7 Am. and Eng. Ency. of Law, p. 118. Second. Those which hold that a party to a contract, who is not in default, may terminate it on failure of the other party to comply with it in matters which are of the substance thereof, even though the default is not of such a nature as to defeat its whole purpose: Ballance v. Vanuxem, 191 Ill. 319; Railroad v. Richards, 152 Ill. 59; Gerli v. Poidebard Mfg. Co., 57 N. J. L. 432; Stevenson v. Cady, 117 Mass. 6; Kokomo, etc., Co. v. Inman, 134 N. Y. 92; Robson v. Bohn, 27 Minn. 333; McGrath v. Gegner, 77 Md. 331. Third. Those in which forfeitures for nonpayment of rent or for unwarranted use have been upheld: Illingworth v. Miltenberger, 11 Mo. 87; Walker v. Engler, 30 Mo. 130; Farwell v. Easton, 63 Mo. 446. Fourth. Those in which any ground may be made cause for forfeiture and will be upheld, unless illegal or against public policy: Dwight v. Ins. Co., 103 N. Y. 347; Taylor v. Trustees, 43 Atl. 613; Frary v. Am. Rub. Co., 52 Minn. 264; Koehler v. Bull, 94 Mich. 496; Blaine v. Knapp, 140 Mo. 250, approving last two cases; 7 Am. and Eng. Ency. of Law, p. 118.

VALLIANT, J.—This suit grows out of a contract between the plaintiffs and defendant for the sale of a

certain patented article known as the Hoe & Gauge Attachment for Corn Planters. Plaintiffs were the owners of the patent; in December, 1898, they made a contract in writing with defendant under which he was to have the exclusive sale of the attachments in Missouri and Kansas; plaintiffs were to manufacture and sell the articles to defendant at the price of $1.75 a set; but if there was a rise or fall of as much as ten per cent in the market price of the materials of which the attachments were made, there was to be a corresponding rise or fall in the price of the attachments sold by plaintiffs to defendant; defendant was to pay, on July 1st of each year, for all the attachments sold him that year.

It was stipulated in the contract that it was to remain in full force during the life of the patent unless sooner terminated by mutual consent, or unless one of the parties should violate the terms, in which event the other, at his option, might terminate it by giving written notice within a reasonable time after hearing of the breach. The patent will expire December 6, 1904.

Between March 9, 1899, and May 13th of the same year, plaintiffs sold and delivered to defendant 768 sets of attachments. Between those dates there was a rise in the market price of the material, that is to say, up to April 1st the price had risen fourteen per cent, and up to May 1st it had risen twenty-nine per cent, increasing the cost of the attachments twenty-five cents and fifty-two cents per set, respectively. On April 15th, plaintiffs gave written notice to defendant, that he would have to pay the advanced prices. The petition asks judgment for all the attachments delivered before April 15th, at the original price, $1.75; for those delivered after that date up to May 1st, $2 a set; and for those delivered after that date, $2.27 a set.

The answer admits the contract as stated in the petition and that under it defendant purchased the number of attachments stated, but it says that of the 768 sets of attachments sued for, all but twenty-two were ordered

Vivian v. Robertson.

before April 15th, and that he owes for all ordered before that date only $1.75 a set, and for the twenty-two sets ordered after that date $2 a set.

Then the answer goes on to state that the plaintiffs violated the contract by selling the attachments to other persons in Missouri, and thus interfered with defendant's trade, and caused him to lose $2,500, for which he asks judgment.

And for a second counterclaim the answer states that on September 13, 1899, the plaintiffs refused longer to furnish the attachments and refused to allow him the exclusive right to sell the same in that agreed territory, and broke the contract, to the defendant's damage in the sum of $10,000, for which he prays judgment.

The cause was tried by the court, jury being waived. There was a finding for plaintiffs in the sum of $1,286.23 on their cause of action, and for the plaintiffs on both counterclaims and judgment accordingly, from which the defendant appeals.

I.   Appellant makes the point that the petition does not state facts sufficient to constitute a cause of action. This point was made at the beginning of the trial in the form of an objection to the introduction of any evidence to support the petition.   But the particular defect to which attention is called in the briefs for appellant now was not called to the attention of the trial court. In such case, if the statements of the petition are susceptible of a construction that will constitute a cause of action, they will be so construed.   The rule that a pleading is to be construed most strongly against the pleader will not be applied in the appellate court when the supposed defect was not called to the attention of the trial court.

The alleged defect in this petition is that it states that by the terms of the contract the goods were to be delivered "f. o. b. cars in St. Louis," and does not state what that means.   So far as concerns the matters in controversy between the parties here, that criticised

term is entirely unnecessary. If it is unintelligible, as appellant thinks it is, it adds nothing to the plaintiffs' case, and if it is stricken out or disregarded, as surplusage, it does not impair the remaining statements in the petition.

II. The grounds on which the defendant contests the plaintiffs' claim are (a) that he had ordered the goods before he received notice from the plaintiffs that there would be an increase in the price, and (b) the plaintiffs had on hand before the rise in the market price of the material sufficient material to manufacture all the goods ordered.

These two defenses rest upon the defendant's interpretation of the contract. The language of the contract that bears on this subject is: "All future orders to be purchased from party of first part at their factory at one and seventy-five hundredths ($1.75) dollars per set, f. o. b. cars at St. Louis, payable July 1st of the year they are ordered. This price ($1.75) is to be increased or diminished in proportion to the rise or fall of price of material of which they are made when the rise or fall of price of material is as much as ten per cent of the price."

The standard by which the price of the goods was to be determined was fixed by the contract. No notice was required by the terms expressed and none was contemplated. Both parties were in the market, and one knew as much as the other about the fluctuation of the price of iron and steel. It no more devolved on the plaintiffs to notify defendant that the price had gone up than it would have devolved on the defendant to notify the plaintiffs that the price had gone down. When July 1st came and the bill was due, either party had a right to demand that the price ($1.75) should be scaled up or down according to the market at the several dates of the deliveries. The testimony showed that the goods were delivered as defendant ordered delivery. Under those circumstances the sale was complete when

the goods were delivered. [Collins v. Wayne L. Co., 128 Mo. 451; Scharff v. Meyer, 133 Mo. 428.]

The evidence is conflicting as to whether plaintiffs had on hand from the beginning sufficient material with which to fill the orders for the season. But that is immaterial. The contract regulated the price of the manufactured article, not by what the plaintiffs paid for the material, but by its market price. The steel the plaintiffs may have had on hand was worth as much to them as the money they would have had to pay for it if they had not had it on hand, and its market value was the same on a given day as if it had been purchased that day.

The circuit court took the correct view of that subject.

III. The defendant's first counterclaim rests on the statement that plaintiffs, in violation of their contract, sold these attachments to a rival concern in St. Louis, to compete in the trade with defendant in the territory in which plaintiffs had contracted to give defendant the exclusive right. The most that can be said for defendant on this point is that his testimony tended to prove the allegations. The court took the defendant's view of the law and gave an instruction asked by him, under which, if it had found the facts as his evidence tended to prove, the finding on that issue would have been for the defendant. But the plaintiffs introduced evidence to the contrary and the court after weighing the evidence on both sides found the facts for the plaintiffs. Under those conditions, in an action at law, this court finds nothing to review.

IV. The second counterclaim is based on the fact that in September, 1899, the plaintiffs declared the contract terminated and refused any further performance of it.

The evidence shows that a dispute arose between the plaintiffs and defendant concerning the account sued

Vol 176 mo—15

on in the petition and that defendant refused to pay it. On September 12, 1899, defendant wrote a letter to plaintiffs urging his opinion that he was not bound to pay the higher price except for goods ordered after receipt of the notice contained in the letter of April 15th, and complained of defective construction of the attachments, and of the fact that other jobbers were selling the same goods in his territory and underselling him, and then he said: "As I said before, I am very anxious to get to work now amicably, and try to regain what we have lost along this line; and, under the circumstances, I am willing to pay you $1.75 per set for all those ordered up to the time we received notice of the advance in price, and $2 per set for the forty sets that were shipped and ordered after that time, conditional that you will agree to fully protect me in my territory in the future and will agree to add a clause to our contract that will be acceptable to both your attorney and mine that will provide a suitable indemnity for failure to protect us. It is now time that we should go right into the harness at work and should be getting out new and attractive business—bringing printed matter and get the matter prominently before the trade for the coming year, whether or not we can settle this matter without going into the courts. You must advise me immediately what your arrangements are for supplying the goods for another season, and if there are any advances in the cost of material since the last invoices; this should be arranged at once so we may know exactly on what basis to place our cost. We must hear from you regarding this at once, and if you do not make arrangements promptly to supply us we shall arrange for the manufacture of the goods."

On the next day, September 13th, plaintiffs wrote a letter to defendant in answer to the above in which, after some argument of their side of the matters in dispute, they said: "We hereby under the provisions of article 6 of the contract between you and us of date,

December 30, 1898, declare the said contract entered into between you and us on said December 30, 1898, terminated, and under its provisions we have no further dealings with you. Should you attempt to manufacture or sell the articles covered by patent No. 374218, we shall hold you liable for infringement under the patent law.''

The argument of appellant is that the mere refusal to pay for the goods, theretofore sold, did not furnish justification to the plaintiffs to terminate the contract.

In support of this proposition, we are referred to Beach on the Modern Law of Contracts, wherein the author says, vol. 1, section 619: ''In contracts for work or skill, and the materials upon which it is to be bestowed, a statement fixing the time of performance of the contract is not ordinarily of its essence, and a failure to perform within the time stipulated, followed by substantial performance after a short delay, will not justify the aggrieved party in repudiating the entire contract, but will simply give him his action for damages for the breach of the stipulation.'' And again; section 849: ''In a contract for the sale of goods, to be executed by a series of deliveries and payments, defaults of either party with reference to one or more of the stipulated acts will not ordinarily discharge the other party from his obligation and entitle him to rescind the contract unless the conduct of the party in default be such as to evince an intention to abandon the contract, or a design no longer to be bound by its terms.'' The law as there quoted is not in conflict with the following from Benjamin on Sales (7 Am. Ed. 605), quoted in the brief of respondent: ''On the other hand, there is abundant authority in America as in England that, if the buyer not only refuses to pay for one installment, but puts his refusal on such ground as justifies the inference that he repudiates the contract, or insists upon new terms different from the original agreement, the vendor may be released from any subsequent delivery.''

Vivian v. Robertson.

In his letter of September 12th, above quoted, the defendant not only refused to pay the bill for the goods sold that year at the prices charged, but made it a condition to his paying even what he acknowledged to be due according to his own interpretation of the contract, that the plaintiffs should indemnify him against loss by any future invasion of his territory. In the trial of the issues on the first counterclaim it came out in the evidence that the plaintiffs had sold these attachments to a concern to be sold in Texas, and that that concern, without the knowledge or consent of the plaintiffs, had sold the articles in Missouri, and had seriously interfered with the defendant's trade. The meaning of defendant's letter was that he would comply with his part of the contract as he himself interpreted it, provided the plaintiffs would indemnify him against any such invasion of his territory in the future, a matter over which the plaintiffs had no control. And the letter concluded with a threat that unless the plaintiffs made arrangements to supply the defendant (by which we understand he meant, supply him on the terms he proposed), he would arrange for the manufacturing of the goods himself.

The contract expressly provided that if either party should violate its terms the other party at his option might terminate it by giving written notice.

Under these circumstances the plaintiffs were justified in terminating the contract. The judgment of the court on the defendant's second counterclaim was right.

The judgment is affirmed. All concur.