Robert Coleman, Trustee, v. Kansas City, Missouri, Appellant.—
156 S. W. (2d) 644.

Division One, October 30, 1941.

Rehearing Denied, December 12, 1941.

*William E. Kemp* and *John J. Cosgrove* for appellant.

*William G. Boatright, Harry L. Jacobs* and *James Daleo* for respondent.

922

■■■ CLARK, J.—Coleman, as trustee for sixty-four city employees who assigned to him their claims for salary for the months of January, February, March and April, 1939 (last four months of the city fiscal year of 1938), brought this action and recovered judgment in the circuit court of Jackson County for the sum of $21,397.63. The defendant city has appealed.

It is admitted that each assignor was duly appointed to, and performed the services of, his respective position during the four months in question and has not received the salary for which he sued; also that the rate of pay for which each assignor sued was fixed by ordinance.

Questions briefed and argued in this court by appellant are: (1) the assignments are void; (2) the salary ordinance was repealed or amended by the budget and appropriation ordinances which provided a less amount for salaries; (3) the city is entitled to setoffs against the claims of certain of the assignors; (4) ■■■ the trial court erred in allowing interest on the claims.

(1) Each assignment stated: "The undersigned, for the purpose of collection by suit against Kansas City . . . does hereby sell, assign, set over and transfer to Robert Coleman . . . claim in the sum of $———— for services rendered to Kansas City, Missouri, during fiscal year of 1938, which ended April 30, 1939. . . . The said Robert Coleman shall account and pay over to the undersigned, the sum collected on said account, whether by suit or otherwise, without cost to the assignor, except actual expenses and cost of litigation, and attorney fees."

Section 476 of the Charter of Kansas City reads: "The sale, encumbrance or assignment by officers and employees of the city of the salary, wages or compensation paid or to be paid them by the city is prohibited, and shall convey no right to the vendee, assignee or mortgagee thereof, whether said salary, wages or compensation be earned or unearned."

Appellant contends that the above quoted charter provision makes the assignments in this case void and in support of its contention cites State ex rel. v. Kent, 98 Mo. App. 281, 71 S. W. 1066. In that case, under an ordinance somewhat like that above quoted, it was held that a sale and assignment of wages due from the city was void. The opinion correctly reasons that to permit the sale or encumbrance of wages by municipal employees would tend to impair the efficiency of the public service, and therefore an ordinance prohibiting such sale or encumbrance is a valid exercise of the city's power. However, the court was careful to say that such a provision might not invalidate all assignments coming within its literal terms, saying: "Thus, an administrator, or a general assignee under state laws, or in bankruptcy, might be held not within the intent of the ordinance."

In the instant case the claims were not *sold*. The claimants did not part with the beneficial interest, but merely combined their claims and appointed a trustee to bring suit in his name for their benefit. It is so stated in the assignments and found to be true by the court in a special finding of fact. Thus, the same considerations of public policy which influenced the court in the Kent case, and other cases, are not present here.

Section 850, Revised Statutes Missouri 1939, Mo. Stat. Ann., sec. 699, page 906, provides that "a trustee of an express trust, . . . may sue in his own name without joining with him the person for whose benefit the suit is prosecuted." This statute, as in the instant case, often makes it possible to avoid a multiplicity of suits and has never been held unreasonable or against public policy. We do not believe that the intent of the charter provision above mentioned is to deprive these employees of their statutory right to appoint a trustee to sue for their matured, but disputed, claims for their benefit. We therefore hold the assignments valid.

(2) We will try to avoid extensive quotations from the many provisions of the city charter which were introduced in evidence. Suffice it to say that the charter requires salaries and wages to be fixed by ordinance; that all expenses must be annually budgeted in accordance with the revenue provided; and restrictions are imposed to prevent expenditures in excess of appropriations.

For the fiscal year of 1938, the city council estimated the total revenue at $6,450,000 and appropriated practically the entire amount. It is conceded that for the fiscal year the city appropriated for salaries only enough to pay about two-thirds of the schedule contained in the salary ordinance then in force. Accordingly, no salaries were paid for the last four months of the fiscal year, except one claimant was paid for one month and another for one-half of a month.

Appellant says that the appropriation ordinance had the effect of repealing or revising the salary ordinance and cites many cases from other jurisdictions. Some of these cases support appellant's contention, but we think the better rule and the weight of authority are to the contrary. Repeal by implication is not favored. [Graves v. Little Tarkio Drainage Dist., 345 Mo. 557, 134 S. W. (2d) 70; United States v. Langston, 118 U. S. 389, 6 Sup. Ct. 1185.] The syllabus of the latter case is: "A statute which fixes the annual salary of a public officer at a designated sum without limitation as to time, is not abrogated or suspended by subsequent enactments appropriating a less amount for his services for a particular fiscal year, but containing no words which expressly or impliedly modify or repeal it." [See also Magner v. ▮▮▮ City of St. Louis, 179 Mo. 495, 78 S. W. 782; State ex rel. Mulvoy v. Miller, 315 Mo. 41, 285 S. W. 504; State ex rel. Hill v. Thatcher, 230 Mo. App. 1125, 94 S. W. (2d) 1053; Reed v. Jackson County, 346 Mo. 720, 142 S. W. (2d) 862.]

924

In the instant case the appropriation ordinance contained no words expressly amending or repealing the salary ordinance, nor do we find any words implying an intent to do so. Appropriations were subject to revision during the year, transfers from some funds to others were frequently made, and the number of employees varied from time to time. So, it would have been difficult, if not impossible, to determine from the appropriation ordinance the rate of pay of any employee at any given time. There may be circumstances under which the liability of a municipality for an expenditure is limited to the amount appropriated therefor, but not under the facts of this case.

We hold that the salaries of the city officers and employees as fixed by the salary ordinance were not reduced by the city's failure to appropriate enough money to pay them. Many cases could be cited in support of this holding, but it is enough to refer to our recent case of State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S. W. (2d) 532, wherein we considered this same question under the Kansas City charter and, in effect, decided against the present contention of appellant.

(3) The appellant city claims setoffs in the total sum of $3378 against fourteen of the assignors for alleged over payments during the fiscal year of 1938 and prior years. These payments were made by checks on a so-called emergency fund under the control of the City Manager, which fund was accumulated from various sources, including some appropriations by the council from the general revenue. As to seven of these assignors appellant relies on the testimony of a witness who had examined the city records and said they showed certain warrants issued in favor of the assignors. The witness disclaimed any personal knowledge that these persons actually received or cashed the warrants, or the purpose for which the warrants were issued, and there was no proof that these persons received full payment of salaries for previous years.

Assignor Connor, City Auditor, admitted receiving $5996 for extra services from March 1, 1935, to February 6, 1939. (This is more than the total offsets claimed against all the assignors.) Connor said he was required to take over the direction of the traffic bureau, in addition to his duties as Auditor, and the extra payments were on that account. He also said that deductions from his scheduled salary as Auditor in previous years exceeded the total of the payments for extra services. He was a witness for appellant and there was no testimony to contradict that given by him.

Assignor Boyle, a member of the police department and for a short time Director of Police, received payments for expenses in the sum of $445.85 and for extra services in the sum of $720, aggregating $1165.85 from January 18, 1936, to February 4, 1940. The only testimony on this matter was given by Boyle himself who was offered as a witness by appellant. He said, in substance, that some of the

payments were to reimburse him for trips on city business to points outside the State; some for expenses incurred in investigations in Kansas City and some for extra services. He said that for a time while he was acting secretary to the Director of Police he was also acting Lieutenant of Detectives, but received through the regular channels only the pay of a detective.. He was compensated for these extra services and for other services rendered to the Police Relief Association and to the City Manager by payments from the emergency fund.

Assignor Foerster received pay for extra services in the total sum of $240 from April 2, 1935, to April 28, 1937. These payments were for work in preparing the city budget, not a part of his regular duties, which he performed at his home outside office hours. His regular salary for some years prior to 1938 had not been paid in full.

Assignor Bensted received payments totaling $990 from April 2, 1935, to April 13, 1938, for extra services in assisting to prepare the budget. His testimony was similar to that of Foerster.

Assignor Manning, while performing his duties as a clerk in the City Counselor's office, acted as secretary to the counselor for three months in 1938 during the absence of his regular secretary. For this extra service he received $75. He said that in the years prior to 1938 his regular salary had not been paid in full, the deductions amounting to $400 or $500.

Assignor Hoey, while secretary for the City Treasurer, received $75 for acting as secretary for the City Manager while his secretary was on vacation. During this time she worked after hours and performed the duties as secretary for both officials. She testified that the city failed to pay her full salary for years prior to 1938, the deductions amounting to $1200 or $1300.

Assignor Zachman was appointed secretary to the Mayor on November 15, 1937, at a scheduled salary of $212.50 per month. Prior to the appointment, he was employed by the City Manager to write and edit a book on the new city hall for which he was paid $100, also to conduct an educational campaign intended to reduce accidents on the city streets. For the latter services, extending over a period of fifteen months he received $500. At the time he was appointed secretary to the Mayor he was making more than the scheduled salary for that position. The Mayor induced him to accept the position on the promise to pay him $400 per month, provided he would perform certain extra services for the Mayor and for the City Manager. These services were to consist of handling "all publicity, promotional and advertising work that might develop in these two offices. In addition, to reorganize and handle the city parole system so far as it applied to the Mayor's office." For these extra services he was paid at the rate of $187.50 per month for a period of five months or a total of $937.50.

The trial court, at respondent's request, made many findings of fact, including the following: that all payments made to the various officers and employees out of the emergency fund, together with payments by city warrants, did not exceed the compensation fixed by the salary ordinance for the fiscal year in which such payments were received; that all services and expenses for which payment was made were actually rendered or incurred in good faith and the payments were not in excess of the rates fixed by the salary ordinance, or in excess of the reasonable value of such services or the amount of expenses incurred; and that all such payments were voluntarily made by the city, with full knowledge of the facts, and without any fraud on the part of the assignors.

This is a law case and the trial court's findings of fact, if supported by substantial evidence, are binding on us. [St. L. & S. F. Ry. Co. v. Dillard, 328 Mo. 1154, 43 S. W. (2d) 1034.] This disposes of the claims for setoffs against all the assignors except Zachman and Boyle, for there is substantial evidence that each of them except Zachman and Boyle suffered deductions from his scheduled salary in previous years in excess of the payments received for extra services. This being true, the city is not entitled to setoffs whether or not the claimants were entitled to receive pay for extra services, for they were certainly entitled to receive the amount which the city still owed them on account of wrongfully withholding portions of their back salaries. [State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S. W. (2d) 532.] There is no contention that the deductions were made for failure of claimants to perform their official duties.

There is no proof that either Boyle or Zachman received any deductions from salary in years prior to the fiscal year of 1938. The contract to pay Boyle for extra services was made with the City Manager and the Zachman contract was with the Mayor and the City Manager. Neither contract was in writing as required by Section 3349, Revised Statutes Missouri 1939, Mo. Stat. Ann., sec. 2962, page 1827, and, if unperformed, the contracts would not be enforceable. However, respondent claims that since the contracts have been fully performed and the city, with full knowledge of all the facts, has voluntarily paid the agreed consideration, it cannot now recover the amount paid or interpose the same as an offset; that the making of these contracts was not an act which the city had no power to perform, but rather a defective exercise of a valid power, citing: Sparks v. Jasper County, 213 Mo. 218, 112 S. W. 265; Seaman v. Levee Dist., 219 Mo. 1, 117 S. W. 1084; Witmer v. Nichols, 320 Mo. 665, 8 S. W. (2d) 63; 43 Corpus Juris 706, sec. 1185; 43 Corpus Juris 694, sec. 1153.

Those cases do not rule the instant case because here the city is expressly prohibited from paying for extra services.

Section 130 of the salary ordinance is, in part, as follows:

"Until otherwise provided by ordinance and except as otherwise may be provided in the charter, the positions, officials, and employes in the city's service and respective rates of salaries or compensation for all services rendered by any such, whether in the capacity named or other, may be but shall not exceed the numbers or amounts respectively herein designated."

Section 131 of the same ordinance includes the following:

"No officer, appointee or employee in the city service shall be entitled to any additional salary or compensation other than as expressly provided by the charter or this ordinance for any duty performed or service rendered for the city or in or about its business or affairs, and this regardless of the office or position held or work done or service rendered."

As we construe the above provisions of the ordinance, the city was prohibited from paying any officer or employee more than the scheduled salary for one office, even though he may have performed duties pertaining to one or more other offices or duties which had not been assigned to any office. This prohibition destroyed the right which otherwise the city may have had to pay, and these claimants to receive, extra pay for extra services.

"The equitable doctrine which prevents the recovery of money paid for services actually rendered to a city, although not authorized by law, does not apply where the payments were made in violation of a law which expressly forbade them." [43 Corpus Juris 706, sec. 1185.]

Respondent says that, in any event, the city is not entitled to setoffs for payments made prior to the fiscal year of 1938. As we understand it, he bases his argument on the fact that, since the claimants by suing for salary earned in that year alone have barred themselves from hereafter claiming salary for previous years, the city should likewise be limited to that year as to setoffs. We do not think so. At least within the period of limitations (and the statute of limitations has not been pleaded) the city is entitled to setoffs for such payments as it had no power to make.

The rule seems harsh which bars these two claimants from compensation for extra services rendered in good faith, but we are compelled to hold that the ordinance prohibiting payment for such services is binding on them and on the city.

It is unnecessary for us to decide whether the city is entitled to set off the amount paid Boyle for expenses or the amount paid Zachman for writing a book and for conducting a safety campaign before he held any official position with the city. This is so because the amount paid each of them for extra services, and which must be allowed as a setoff, exceeds their respective claims for deductions in salary. The trial court allowed Boyle $490 and the city is entitled to a setoff of $720. The Zachman claim was allowed in the sum of $743.75 and the setoff is $1037.50. Therefore, as the city does not ask judgment for

928

the excess of the setoffs over the claims, it is immaterial whether or not the city should be allowed further setoffs.

(4) The trial court rendered judgment for interest on each claim at the rate of six per cent per annum from the close of the fiscal year of 1938.

This was error. These claims are not of such nature as to draw interest until demand for payment. [Section 3226, Revised Statutes Missouri 1939, Mo. Stat. Ann., sec. 2839, page 4623; Thompson v. School District, 71 Mo. 495.] No demand for payment was proved except the filing of the suit.

Respondent says that appellant did not raise the question of interest at the trial or in its motion for a new trial. However, the allowance of interest was put in issue by the pleadings and one of the reasons for a new trial stated in appellant's motion was the giving of the second conclusion of law by the court at the request of respondent. That conclusion of law allowed interest on the claims from the close of the fiscal year. The question of allowance of interest is properly before us. [Bobos v. Krey Packing Co., 317 Mo. 108, 296 S. W. 157.]

We hold that appellant is not entitled to setoff against any of the claims except those of Boyle and Zachman; that appellant should be allowed a setoff against the Boyle claim in the sum of $720 and against the Zachman claim in the sum of $1037.50, but should not be given judgment for any excess of such setoff over these claims, because not prayed for in the answer; that each claimant should be allowed interest on the amount due him at ▮▮▮ the rate of six per cent per annum, simple interest, from the date of suit.

. The cause is remanded with directions to amend the judgment accordingly. All concur.