KANSAS CITY, MISSOURI, a Municipal Corporation, v. H. H. HALVORSON, Appellant.—No. 38611.—177 S. W. (2d) 495.

Division Two, December 6, 1943.

Rehearing Denied, January 3, 1944.

Motion to Transfer to Banc Overruled, February 7, 1944.

*Ernest D. Martin* for appellant.

*William E. Kemp,* City Counselor, and *David M. Proctor,* Assistant City Counselor, for respondent.

BOHLING, C.—This is an action by the city of Kansas City, Missouri, a municipal corporation, against H. H. Halvorson to recover certain money allegedly received by defendant as the result

of an unlawful conspiracy to defraud the municipality thereof. Judgment for plaintiff for $154,129.21 and defendant appealed. The principal assignments question the jurisdiction of the trial court, the sufficiency of the petition and the substantiveness of the evidence.

Defendant's contention that the trial court did not have jurisdiction is based upon the assertion that no "listing card" was ever filed in the cause as required by Rule 22 of the circuit court of Jackson county, Missouri (Meierhoffer v. Hansel, 294 Mo. 195, 202 (I, II), 243 S. W. 131, 132[1, 2]), defendant stating the allegations in his motion for new trial, supported by his affidavit, were sufficient for granting a new trial on said ground (Pearce v. Rogers (Mo. App.), 15 S. W. 2d 874, 875[3]). A supplemental abstract filed by plaintiff discloses a "listing card" in the instant case, showing service on defendant's then attorney of record on April 8, 1942, and other supporting data. Trial occurred January 25, 1943. We may not predicate reversible error on the showing made.

Plaintiff's amended petition, omitting matters of a more or less formal nature, was to the effect: Defendant and the city manager of Kansas City, acting in his official capacity, entered into an unlawful, illegal, wrongful and fraudulent scheme, plan, devise and conspiracy, whereby defendant, during negotiations for the purchase of lands needed and to be used in connection with public improvements to be financed by certain bond issues of said city, was to present to said city manager bills or invoices for pretended services performed for said city as a real estate agent, and said city manager, in furtherance of said unlawful conspiracy, was to approve and procure the payment by said city of such bills when presented, and that said city manager, in furtherance and as a part of said unlawful conspiracy, was to procure the approval of said bills and the issuance of requisitions by the proper city department for warrants in favor of defendant on the Treasurer of said city by the city Director of Finance in payment of said bills as presented by defendant for said pretended services on behalf of said city, and that, in furtherance of said unlawful conspiracy. it was further agreed that the provisions of Sec. 92, Art. IV, of the Charter of said city and Sec. 3349, R. S. 1939, should be wholly ignored.

Plaintiff's petition further charged that pursuant to said unlawful conspiracy defendant, on various dates between December 12, 1933, and October 27, 1938, both inclusive, did present bills for pretended services to said city to said city manager and following the presentation of individual bills said city manager, acting in his official capacity and in furtherance of said unlawful conspiracy, fraudulently approved the same for payment, procured its approval for payment by the head of the department of the city government in charge of the improvement, and also procured the issuance of a warrant on the Treasurer of said city in favor of defendant by the Director of Finance of said city in payment of each and everyone of said bills so presented by

defendant; that said warrants were delivered to defendant and by him presented for payment, and the face amount of all of said warrants were duly paid to defendant out of the public funds of said city by the treasurer thereof; that in furtherance of said unlawful conspiracy said warrants, so procured and delivered to defendant, were issued and delivered to defendant in direct violation of Sec. 92 of the Charter of said city, and Sec. 3349, R. S. 1939; i. e., each was issued and delivered without a contract in writing between defendant and said city as required by law.

Plaintiff's petition next sets out a list of said warrants, showing the date, the particular bond fund to be charged and the amount of the respective warrant, totaling $132,403.76 principal amount.

Plaintiff's petition further charged that each of said payments to defendant was the result of defendant and said city manager acting in concert with each other and in direct violation of said Secs. 92 and 3349, in that no contract in writing existed therefor between defendant and said city.

Plaintiff's petition further states that as a direct result of the unlawful conspiracy, entered into and executed by defendant and said city manager, defendant fraudulently procured possession and custody of public funds and moneys from said city in the aggregate sum of $132,403.76, to plaintiff's corresponding damage, and defendant became indebted to plaintiff in said sum and is obligated to return and refund to plaintiff said sum, which defendant is wrongfully withholding and has failed and refused to return.

There was evidence in the case from defendant's deposition establishing, if believed, that the city manager talked to defendant about services to the city as a real estate agent; that defendant rendered certain such services; that defendant had no written agreement about anything; that defendant's records covering such services had been destroyed and he had no records thereof now; that the city manager would tell defendant " 'Go ahead and do this and if things work out all right when it is satisfactorily completed, I will see that you are well paid' "; that the city manager determined what was coming to defendant— ". . . he really fixed the fee rather than myself"; that the city manager would say: " 'Do you want some money now? I haven't paid you for some time' "; and when defendant indicated a payment would be satisfactory, the city manager would continue: " 'I will give you a check tomorrow.' " The city manager or his secretary always gave defendant his check. It was never mailed or delivered by any other official. Defendant testified that he was performing services for the city manager all the time; his account kept running: "You might say I had an open account with him and he paid me as he could or when he had funds to pay me with"; by open account, defendant meant a running account, and that the warrants defendant received were not in payment of any particular service; they were more on account of all his services. The cash "went into

my bank account, business activities and home." The city manager once told him " 'You are getting a lot of nice business. Don't be silly. If you make a display of your bank account or take newspaper publicity on your deals, you just automatically are going to lose your business.' " Plaintiff advances the argument that the reasonable value, from the evidence, of all services rendered by defendant to the municipality might approximate $15,000. Defendant's answer was a general denial. He was not present or represented at the trial.

██ Certain Missouri statutory provisions, as well as charter provisions of plaintiff municipality, prohibit any obligation of the nature involved becoming binding on plaintiff city unless the same be, among other things, in writing; viz.:

"No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing." Sec. 3349, R. S. 1939.

"All contracts shall be executed in the name of the city by the head of the department or officer concerned, except contracts for purchase of supplies, material, services other than personal, or equipment made by the Commissioner of Purchases and Supplies. No contract or order imposing any financial obligation on the city shall be binding upon the city unless it be in writing . . . ." Sec. 92, Art. IV, Charter, Kansas City.

██ Here, according to the pleaded facts and evidence, we have an outgo of public moneys in direct violation of positive laws. That unauthorized payments of public moneys by an official may be recovered is an exception to the general rule that money ██ voluntarily paid under a mistake of law cannot be recovered, and a more firm foundation exists when the payment, as here, is in direct violation of positive law. Lamar Twp. v. Lamar, 261 Mo. 171, 184, 169 S. W. 12, 14[5, 6]; Ann. Cas. 1916D, 740; Wisconsin Cent. Rd. Co. v. United States, 164 U. S. 190, 210, 41 L. Ed. 399, 17 S. Ct. 45; Annotations, 63 A. L. R. 1356(b.); 53 A. L. R. 953; Ann. Cas. 1913B, 651; 94 Am. St. Rep. 424(h). See State v. Weatherby, 344 Mo. 848, 855 [3], 129 S. W. 2d 887, 891[3-5]. Donovan v. Kansas City, 352 Mo. 430, 175 S. W. 2d 874, 179 S. W. 2d 108, is to the effect that municipal contracts or obligations in the circumstances set forth in the petition and established by the evidence contravene mandatory statutory provisions, cannot be made legally, are wholly void and are of no legal effect, as much so as municipal contracts not within the scope of the municipality's powers; that the rights of citizens comprising the municipality, the public corporation, against unauthorized and prohibited

acts of the municipal officials are the paramount rights, legally and morally, in which the state is interested as a matter of public policy, especially rights within explicit legislative sanction. No rights of a third party are here involved. See also Coleman v. Kansas City, 348 Mo. 916, 927, 156 S. W. 2d 644, 649[9, 12].

■ The instant case involves a fraudulent conspiracy to acquire public funds in a manner considered to be beyond the authority conferred upon the municipality to part with its public moneys and not a mere irregularity in the exercise of a power. This feature of the case distinguishes it from rulings, contradistinguished from observations, in Sparks v. Jasper County, 213 Mo. 218, 237(IV), 112 S. W. 265(4); Simpson v. Stoddard County, 173 Mo. 421, 466, 73 S. W. 700, 710, and other cases. Sparks v. Jasper County recognizes this, we think, at pages 243 and 272, respectively, including the quotation from Simpson v. Stoddard County there found. See also observations in Coleman v. Kansas City, 348 Mo. 916, 926, 156 S. W. 2d 644, 648; State v. Weatherby, 344 Mo. 848, 858, 129 S. W. 2d 887, 892. Then too fraud is involved here.

The petition states a cause of action and the evidence is sufficient to support a judgment based upon illegal payments of public moneys in contravention of Secs. 3349 and 92, aforesaid, all accomplished by means of and in furtherance of a single unlawful conspiracy between defendant and a public official to so defraud plaintiff municipality.

After considering defendant's cases, cited without attempting to apply any holding to any material facts here involved, we fail to find reversible error established in plaintiff suing on the several payments to defendant in one count. The petition and the proof tended to establish they were all part of one conspiracy, which came to a conclusion upon the payment of the last item mentioned in plaintiff's petition.

There is no substance under the instant facts to defendant's assertion that payments voluntarily made with full knowledge of all the facts, in the absence of fraud or duress, cannot be recovered. The petition alleges that defendant obtained plaintiff's money as the result of a completed fraudulent conspiracy, et cetera. The acts of the city manager beyond the scope of his authority were his individual acts and not the acts of the city. Outlays of the municipality's money thus procured were not voluntarily payments by the municipality. The payments made were not a settlement, an accord, or a satisfaction on the part of the municipality, defendant's assertion to the contrary notwithstanding.

■ No statute of limitation was presented as an issue nisi and limitations are not for consideration here. State ex rel. v. Spencer, 79 Mo. 314, 316; 1 Houts, Mo. Pl. & Pr., p. 414, n. 95.

■ The judgment of $154,129.21 was entered upon findings that the defendant was indebted to plaintiff in the principal sum of $132,-403.76, with interest thereon between named dates in the amount of

$21,725.45. We find no allegation in the petition or the prayer thereof covering interest due plaintiff. A recovery of $132,403.76 is within the pleadings and the evidence. The $21,725.45 awarded, not being within the pleadings, should not have been included in the judgment. Moore v. McHaney, 191 Mo. App. 686, 698, 178 S. W. 258, 262[11]; Hannan, Hickey Bros. Const. Co. v. Chicago, B. & Q. Rd. Co. (Mo. App.), 247 S. W. 436, 441[10]; same case (Mo.), 226 S. W. 881, 882[1], citing cases.

In the circumstances if plaintiff will enter a remittitur of $21,725.45 the judgment will be affirmed for $132,403.76; ▮ otherwise the judgment will be reversed and the cause remanded for new trial. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.