**BRIDE v. CITY OF SLATER.**

No. 43133.

Supreme Court of Missouri.
Division No. 1.

Dec. 14, 1953.

———◆———

William W. Sterrett, Slater, Harold L. Harvey, St. Louis, for City of Slater.

Johnson and Butterfield, Marshall, Harry A. Hall, Kansas City, for respondent-appellant.

VAN OSDOL, Commissioner.

Plaintiff, E. L. Bride, an individual, doing business as E. L. Bride Company, instituted this action against the City of Slater for $6,468.96, allegedly the unpaid purchase price of fuel oil provided by plaintiff Bride to defendant City under a written contract. The defendant City filed its counterclaim for $18,158.07, being the total amount of payments made by defendant City to plaintiff Bride for other fuel oil supplied defendant City by plaintiff pursuant to the contract.

The trial court sustained defendant City's motion to dismiss plaintiff's petition for failure to state a claim upon which relief could be granted. The sustention of the motion was on the stated grounds that the petition showed on its face that the alleged contract was void under the provisions of Section 432.070 RSMo 1949, V.A.M.S., in that the contract failed to state in writing a definite price or consideration for the sales therein provided; and that the petition failed to allege that the contract was approved by the common council of defendant City in compliance with Section 91.530 RSMo 1949, V.A.M.S. Plaintiff has appealed from the order and judgment of dismissal.

The trial court also sustained plaintiff's motion to dismiss defendant City's counterclaim for failure to state a claim upon which relief could be granted. This was on the stated ground that the counterclaim showed on its face that the defendant entered into a written agreement and contract with the plaintiff with the full knowledge of all the facts and circumstances, accepted deliveries which it used for its municipal purposes and for which it paid the contract price; and that, by reason of the City's action in so doing, it is estopped to repudiate the contract and cannot lawfully claim the contract was invalid, or recover the moneys paid. Defendant City has appealed from the order and judgment of dismissal of its counterclaim.

Plaintiff-appellant-respondent Bride contends the trial court erred in sustaining defendant's motion to dismiss plaintiff's petition, and did not err in sustaining plaintiff's motion to dismiss defendant's counterclaim. And defendant-respondent-appellant City contends the converse of plaintiff's contentions relating to the trial court's action on both motions.

Plaintiff in his petition alleged that he was engaged in the fuel-oil business and that defendant, City of Slater, a municipal corporation,

"3. * * * advertised for bids for the sale of fuel oil to the city for its municipal light plant and other operations for the season beginning September 1, 1947, and that pursuant to said request, plaintiff submitted the contract hereinafter referred to as Exhibit A, offering to furnish fuel oil over said period at a price to be fixed at the seller's market price on the date of shipment. ·

"4. That the defendant duly accepted said contract, a true and correct copy of which is herewith referred to and attached as Exhibit A.

"5. Plaintiff states that thereafter and on February 28, 1948, at the special instance and request of the defendant, plaintiff sold two tank cars of fuel oil, totalling 20,448 gallons of the value and at the price of $.16 per gallon, totalling $3,271.68, which said sum was due and payable on March 9, 1948.

·"6. That thereafter, and on March 1, 1948, at the special instance and re-

quest of the defendant, plaintiff sold two additional tank cars of fuel oil, totalling 19,983 gallons of the value and at the price of $.16 a gallon, totalling $3,197.28, which said amount was due and payable on March 11, 1948.

"7. That said oil was shipped to defendant on February 28, 1948, and March 2, 1948, respectively.

"8. Plaintiff further states that the prices charged for said fuel oil are and were at the time when said fuel oil was sold and delivered reasonable and proper and were seller's market prices on dates of shipments, and defendant promised and agreed to pay the same, but though often requested, defendant had failed and refused to pay for said fuel oil, and the whole sum thereof remains due and unpaid.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $6,-468.96, together with interest thereon * * *."

The contract referred to in the petition and attached thereto was in part as follows,

"Between E. L. Bride Company, seller, and City of Slater, Slater, Missouri, buyer. Product: Clean, low sulphur, diesel engine fuel below zero cold test when desired. "Quantity: 3 or 4 tank cars per month. Shipment: Over a period of six months starting September 1st, 1947. Price: Shall be seller's market price on date of shipment. F.O.B.: Refinery. Terms: 1% 10 days from date of shipment. * * *

"This contract dated at Kansas City, Missouri, this 28th day of August, 1947, and when accepted by the buyer contains all the terms of agreement between seller and buyer.

"E. L. Bride Company (Seller)
"By: ———————————
"Title.
"Accepted: City of Slater, Missouri
(Buyer)
" By /S/ R R Howard, Supt
"(Seal)     Municipal Utilities   Title."

(The trial court also sustained defendant's motion to strike Paragraph 6 of the petition on the stated ground that the sale therein alleged was subsequent to the expiration date of the purported contract with defendant City.)

In stating its counterclaim, defendant City alleged the following,

"2. In August, 1947 plaintiff entered into a purported agreement with defendant, signed by the plaintiff and one R. R. Howard, Superintendent of Municipal Utilities for defendant. Said purported agreement contemplated the purchase, by defendant from plaintiff, of fuel oil over a period of six months, beginning September 1, 1947 at 'sellers market price on date of shipment.' Said purported agreement was invalid and wholly void because it was not approved by defendant's common council in compliance with 1939 RSMo, Section 7804 (Section 91.530, supra); because it did not specify any definite price for oil, in violation of 1939 RSMo, § 3349 (Section 432.070, supra); and because it was so indefinite and vague as to be unenforcible.

"3. Subsequent to the signing of said purported agreement, plaintiff shipped to defendant, between the dates of September 11, 1947 and March 5, 1948, twenty-one carloads of fuel oil, and defendant paid to plaintiff the total sum of $18,158.07 as follows,"

(Here were particularly stated the dates and amounts of payments between September 12, 1947 and March 10, 1948, aggregating $18,158.07.)

"Said payments so made by defendant to plaintiff were made under the mistaken belief that said payments were lawful and that defendant was liable to plaintiff for the price charged by plaintiff for oil so shipped to defendant, when in fact defendant was not so liable, and the payments so made by defendant were wholly unlawful.

"Wherefore defendant prays that judgment be entered for defendant.

against plaintiff in the sum of $18,158.-07 together with interest * * *."

In determining whether the petition states a claim or cause of action, the Exhibit A may be considered in connection with allegations of the pleading. Corbin v. Hume-Sinclair Coal Mining Co., 361 Mo. 888, 237 S.W.2d 81; Section 509.130 RSMo 1949, V.A.M.S. We shall assume that the Superintendent of Municipal Utilities, R. R. Howard, had authority to accept plaintiff's offer or bid, that is, that the contract thus completed was entered into pursuant to lawful authority on the part of defendant municipality.

It is provided that, "No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing." Section 432.070, supra.

Plaintiff contends the consideration itself, as stated in the contract involved herein, was definite and readily ascertainable at the date of any purchase—each party knew the market price then prevailing and the price of the oil became fixed. Cases cited by plaintiff are those in which no municipality was a party to the contract, and the language of the contract involved by which the consideration was to be determined was different from that of the contract between plaintiff and defendant City. In this connection, it is of interest to notice that the consideration or price defendant City undertook to pay by its contract with plaintiff was not in any certain sum. The price was entirely conditioned on the will of the seller (plaintiff herein).

In Vivian v. Robertson, 176 Mo. 219, 75 S.W. 644, cited by plaintiff, the contract regulated the stated price of the article sold by raising or lowering the price in accordance with the rise and fall of market price of material used in fabricating the article. In Planters' Nut & Chocolate Co. v. Douglas Candy Co., Mo.App., 240 S.W. 473, 474, plaintiff's recovery was limited to the price stated in the order inasmuch as the court construed the order as one for an immediate shipment and the plaintiff-seller so accepted it. The reviewing court had no reason to consider the effect of a statement, "stamped upon the order", to the effect that future orders were to be accepted at prices ruling on the date of shipment. In Kansas City Breweries Co. v. Ratzer, Mo.App., 198 S.W. 84, the only question considered was one of the interpretation of a contract selling furniture and fixtures which contract stated a "cost price" and provided for an allowance (on the cost price) of "10 per cent. per year for depreciation" during the time defendant continued to purchase beer of plaintiff.

In a case, a seller's action, where private corporations, buyer and seller, had stipulated the price for future shipments "shall be the seller's market price then existing" it was held that the contract was unenforceable because of uncertainty, and also because of want of consideration. Weston Paper Mfg. Co. v. Downing Box Co., 7 Cir., 293 F. 725. In Washington Chocolate Co. v. Canterbury Candy Makers, 18 Wash.2d. 79, 138 P.2d 195, the price was to be in accordance with (seller's) "current price list". It was shown that the seller, in its discretion, charged different prices upon sales to various buyers. The contract was an executory one and also differed from contracts fixing the consideration by reference to market price of universal application. The contract lacked mutuality of obligation because of indefiniteness of purchase price, and was unenforceable. See also Nebraska Aircraft Corporation v. Varney, 8 Cir., 282 F. 608; Taller & Cooper v. Illuminating Electric Co., 7 Cir., 172 F.2d 625; 77 C.J.S., Sales, § 20, p. 606 at page 610.

In the Weston Paper Mfg. Co. case the plaintiff-seller was relying upon the maxim,

"Id certum est quod certum reddi potest." [293 F. 727.] The reviewing court said, "While so recognizing the rule for which plaintiff contends, we are unable to apply it to the facts in this case. We see nothing in this contract which takes from the seller the absolute right to fix the price in the future. Certainly defendant had no voice in fixing this price. Nor did any third party have any immediate influence upon plaintiff in determining the price." The Washington Chocolate Co. case, an action upon a contract between private corporations, illustrates the principle that an executory contract of sale is unenforceable because of want of mutuality where there is no price fixed in the contract or by reference in the contract to some method of calculation that will make the price certain. It has been written that the transaction is void if no price is agreed upon or if the method will fix no certain amount, unless the interpretation is possible that the sale is for a fair price. Vol. 1, Williston on Sales, Rev.Ed., § 168, p. 438. It is important to again note that these cases are not actions against municipalities whose right to contract is conditioned upon compliance with statute such as Section 432.070, supra. But, the cases are of interest to us for the reason that they are persuasive as authority for our determination that the contract in the instant case failed to state a consideration, as required by statute.

Statutes requiring municipal contracts to be in writing usually are construed to be mandatory, and a strict compliance therewith is required in order to bind a city. Vol. 10, McQuillin, The Law of Municipal Corporations, 3d Ed., § 29.22, p. 249 at page 251; Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 179 S.W.2d 108; Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570; Riley v. City of Rock Port, Mo.App., 165 S.W.2d 880; Iowa Bonding & Casualty Co. v. Marceline, Mo.App., 255 S.W. 577; Likes v. City of Rolla, 184 Mo.App. 296, 167 S.W. 645; Cook & Son v. City of Cameron, 144 Mo.App. 137, 128 S.W. 269.

In speaking of the purpose of the statute, 432.070, supra, this court said in the early case of Woolfolk v. Randolph County, 83 Mo. 501, the manifest purpose of the requirement is that the terms of the contract shall, in no essential particular, be left in doubt, or to be determined at some future time, but shall be fixed when the contract is entered into. This was one of the precautions taken to prevent extravagant demands, and to restrain officials from heedless and ill-considered engagements. See also Riley v. City of Rock Port, supra. The statute also safeguards against fraud and peculation. It specifically regulates the mode by which the business of a municipality is to be transacted. No contractual obligation is incurred by a Missouri city in the absence of the writing prescribed.

A court should unhesitatingly enforce compliance with all mandatory legal provisions designed to protect a municipal corporation and its inhabitants. Inasmuch as municipal corporations represent the public, they, themselves, are to be protected against the unauthorized acts of their officers and agents. This, as stated, is necessary in order to guard against and protect the public from fraud and ill-considered and improvident contracts. It is a matter of public policy. Persons dealing with such officers and agents are chargeable with notice of the powers of the public corporation and of the prescribed statutory manner of exercising such powers. If a statute, in taking precautions, provides how the city's contracts shall be executed, the mode of contracting required is generally considered mandatory rather than directory; and the city can make a contract only in the way prescribed, and, if not so made, the contract is void. Kansas City v. Rathford, supra; Kansas City v. Halvorson, 352 Mo. 280, 177 S.W.2d 495; Donovan v. Kansas City, supra; Fleshner v. Kansas City, 348 Mo. 978, 156 S.W.2d 706.

Here there was a written contract purporting to bind the parties, but, under the statute, Section 432.070, supra, the contract lacked the statement of vital, essential contractual element prerequisite by statute to the contract's validity. Consequently, we believe, the contract was "void" and unen-

forceable, quite as if there had been no written contract at all, as against the City as an express contract. Nor could there be a recovery on the theory of implied contract, or estoppel. Donovan v. Kansas City, supra. In a primary sense the contract was not ultra vires the City; but the failure to follow the mandatory requirement of statute was a failure to satisfy a condition precedent to or limitation upon the City's power to obligate itself by contract, and was of like effect in rendering the contract unenforceable as if the contract were ultra vires because it related to a subject matter concerning which the City had no power to contract, or as if the contract purported to incur a municipal liability not authorized by or in violation of law. Kansas City v. Rathford, supra; Donovan v. Kansas City, supra, and cases therein cited; Annotation, 84 A.L.R. 954.

Attending now the parties' contentions relating to error of the trial court in sustaining the motion to dismiss defendant City's counterclaim—

Cases involving the right of a municipality (or other public body) to recover payments made under invalid or unenforceable contracts are examined in the Annotation, 140 A.L.R. 583. The annotator remarks that occasionally attempts have been made to lay down broad principles with respect to the question. "It seems apparent, however, that in view of the relatively large variety of grounds upon which the validity or enforceability of a public contract may be challenged, the large variety of statutory provisions which may and frequently do have application in this class of cases, and the great number of factual circumstances which may have a strong bearing upon the comparative equities of the contractor and the municipality in individual cases, the formulation of any general principles of purportedly universal application, with respect to the right of a public body to recover back sums paid under an invalid or unenforceable contract, is an exceedingly dangerous undertaking." 140 A.L.R. at page 585. But a number of factors and circumstances are noted on which courts have frequently relied in deciding that recovery back may or may not be had. Some of the cases in the Annotation (and see Vol. 38 Am.Jur., Municipal Corporations § 514, pp. 191–193) contain language indicating that if the contract was, in the shown circumstances, completely beyond the power of the municipality to execute, the money paid pursuant to the contract may be recovered back; and where the circumstances are such that a court finds the contract, under which funds of a municipality were paid out, to have been absolutely void as contrasted with a contract which was merely voidable or unenforceable, there is a tendency to hold the money so paid out may be recovered back. Factors, which have been considered in some of the collated cases as affording bases for deciding that recovery back may not be had include those where the municipality has accepted the benefits of an invalid contract and neglects or refuses to make restitution of the benefits received, or where restoration of benefits would be impossible; or where the circumstances indicate that, although there were irregularities in the manner of executing the agreement, its general purpose was within the powers of the municipality. And lack of evidence of bad faith, or lack of evidence of collusion between the contractor and the municipality, is occasionaly relied on in denying recovery of moneys paid.

In the case at bar we have concluded that the contract was void and unenforceable as against defendant City; and that no claim was stated as upon an express contract, or upon the theory of implied contract, or upon the theory that defendant City is estopped to deny the contract's validity. But the contract, though void, pertained to a subject matter concerning which the City had the power to contract; and necessarily defendant City has in its counterclaim stated that it has paid for the shipments of fuel oil on the stated dates.

It is inferred the payments were voluntarily made, and there had been no tender made of the return of the fuel oil which the defendant City has received and for

which City has voluntarily paid. No doubt the City had used the oil and could not tender its restoration to plaintiff, and City and its inhabitants have had the benefit of the use of the fuel oil in the City's legitimate corporate purposes. The transactions within the purview of defendant City's counterclaim were complete and executed. As stated, the oil had been shipped by plaintiff, had been received by defendant City, and defendant City had paid therefor. It was not stated that the payments were not made in good faith, openly as a city usually does in satisfying its obligations. It was not alleged that any city official was personally interested, and there was no averment that the payments were not fair and reasonable, or that there was any fraud on the part of plaintiff or the City's officers, or any collusion between them.

Conspiracies to defraud were involved in Kansas City v. Rathford, supra; and in Kansas City v. Halvorson, supra. In Coleman v. Kansas City, 348 Mo. 916, 156 S.W. 2d 644, cited by defendant City, the moneys allowed Kansas City as a setoff against plaintiff-assignee's valid claims for salaries were moneys paid out in violation of express ordinance of Kansas City. In Smith v. Hendricks, Mo.App., 136 S.W.2d 449, 453, the recovery of moneys paid by a school district was denied in an action instituted by taxpayers. The reviewing court intimated that the action could have been maintained by the State in behalf of the school district. The moneys had been paid to defendant, a member of the school board, in the face of statute prohibiting a member from holding "employment of profit from said board while a member thereof." Sparks v. Jasper County, 213 Mo. 218, 112 S.W. 265, does not aid City's claim. In State v. Weatherby, 344 Mo. 848, 129 S.W. 2d 887, the payments had been made upon warrants unauthorizedly drawn against an appropriation not chargeable therewith.

The sole allegation, upon which defendant City relied to recover back the moneys paid, was that the payments were made under the mistaken belief that they were lawful, and that defendant City was liable therefor.

There were no other facts alleged in the pleading which would afford defendant City the relief upon a theory of money had and received. On the other hand, it would seem unjust and inequitable to permit defendant City's recovery of the money it has paid for the oil which it received, retained, and no doubt used. In stating a claim for the money paid, it would seem that City, under equitable principles, should be bound to state the restoration or tender the restoration of the property it had obtained for the money paid. Witmer v. Nichols, 320 Mo. 665, 8 S.W.2d 63. This is no more than saying that one who seeks equity should do equity. Since the positive allegations were not made, we have inferred the negative of the existence of fraud, collusion, peculation or improvidence against which Section 432.-070 was designed to guard. And, we reiterate, the contract, though void because it did not meet the mandatory requirements of Section 432.070, was one involving a matter within City's contractual powers.

■■ In these circumstances (and limiting our decision to the circumstances of our case), we apply the recognized rule that a municipality cannot accept the benefits of a void contract and retain them and recover back the consideration paid. See Inhabitants of Village of Schell City v. L. M. Rumsey Mfg. Co., 39 Mo.App. 264. In Lamar Township v. City of Lamar, 261 Mo. 171, at pages 189–190, 169 S.W. 12, at page 16, this court recognized the rule was applicable in the circumstances obtaining in the Rumsey case, although the broad *dictum* in the Rumsey opinion (applying the doctrine that payments made under mistake of law cannot be recovered back by a municipality) was criticized in the Lamar case. And see again Sparks v. Jasper County and Witmer v. Nichols, supra.

The trial court's orders and judgments of dismissal should be affirmed.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.