KANSAS CITY, MISSOURI, a Municipal Corporation, Appellant, v. JOHN J. RATHFORD, JOHN J. PRYOR and ROY W. CRIMM, Executor of the Estate of WILLIAM D. BOYLE, Deceased.—No. 39231.—186 S. W. (2d) 570.

Division One, March 5, 1945.

Rehearing Denied, April 2, 1945.

*William E. Kemp,* City Counselor, *David M. Proctor* and *Arthur R. Wolfe,* Assistant City Counselors, for appellants.

*Calvin & Kimbrell, Walter W. Calvin* and *Bert S. Kimbrell* for respondent John J. Pryor.

1134

*Clyde Taylor* for respondent Roy W. Crimm, Executor of the Estate of William D. Boyle.

VAN OSDOL, C.—Action instituted May 2, 1939, to recover $327,500 damages alleged to have been sustained by reason of a fraudulent plan, scheme and conspiracy, and fraudulent and unlawful acts in pursuance thereof. The issues were submitted to a jury, and plaintiff has appealed from the judgment resultant upon verdict for defendants.

Plaintiff (appellant), Kansas City, alleged defendants (respondents) John J. Rathford and John J. Pryor; William D. Boyle, now deceased (defendant-respondent Roy W. Crimm is executor of the will of William D. Boyle); and others, entered into a conspiracy to defraud plaintiff out of large sums of money. It was alleged the conspiracy was made effective by "creating . . . a company . . . or 'fictitious shell' known as the 'Rathford Engineering Company,' . . . through which false . . . material statements . . . would be made to this plaintiff, to the effect that said company could and would render valuable services to this plaintiff and its water department in discovering . . . pretended leaks . . . in the . . . lines of the plaintiff's water supply system and thereby induce the plaintiff . . . to make large appropriations to the water department . . . based upon budgets prepared and submitted by . . . McElroy . . . as city manager, . . . and to issue warrants . . . which would be received by the defendants . . . without . . . rendering such alleged service and without . . . entering into a contract in writing in the manner and form as contracts are required to be entered into by and with municipal corporations under . . . Section 2962 of the Revised Statutes of Missouri, 1929 (now Sec. 3349, R. S. 1939), and Section 92 of Article IV of the Charter of Kansas City, and the Administrative Code of Kansas City . . .

"3. That to carry out said . . . conspiracy . . . said conspirators . . . did form a certain fictitious . . . company by the name of 'Rathford Engineering Company,' and falsely and fraudulently represented to plaintiff that said 'company' could . . . render valuable services to the plaintiff . . . ; that no lawful contract was ever entered into . . . for the performance of water leakage service . . . ; but said parties prepared or caused to be prepared semi-monthly written statements . . . and presented said statements . . . to the . . . acting director of the water department . . . , and said . . . acting director, T. B. Samuel, Jr., wrongfully and unlawfully approved same, and other officers . . . , not knowing of said fraudulent scheme . . . , and relying on the truth . . . of said statements . . . put said bills in line for payment and in due course issued . . . treasury warrants

thereon; that said warrants were issued and made payable to said Rathford Engineering Company, and delivered . . . to the defendant, John J. Rathford, John J. Pryor and William D. Boyle, who, for themselves and those acting with them . . . endorsed said warrants and received payment thereon ▮▮▮ from the water funds of Kansas City . . . in the aggregate amount of three hundred fifty-six thousand five hundred dollars . . . ; that said statements . . . were false and known to be false by the defendants . . . and were made with the intention and purpose of cheating, wronging and defrauding the plaintiff . . .

"4. That the plaintiff, municipal corporation, its council and administrative officers (other than said H. F. McElroy and . . . T. D. Samuel, Jr., . . . ) were deceived and misled . . . .

"6. Plaintiff further states that said William D. Boyle, now deceased, was an active participant in the conspiracy and fraud herein and personally profited thereby and therefrom. . . .

"8. Plaintiff further states that no contract was ever entered into between the plaintiff and . . . defendants, or . . . William D. Boyle, or the Rathford Engineering Company . . . as contracts are required to be entered into by municipal corporations under . . . Section 2962 of the Revised Statutes of Missouri, 1929 (now Sec. 3349, supra), and Section 92 of Article IV of the Charter of Kansas City; that no contract or agreement . . . was ever authorized by the Council of Kansas City, Missouri, or the Commissioner of Purchases & Supplies of Kansas City, Missouri, as required by Article XV of Ordinance No. 52820 . . . .

"9. Plaintiff further states that each and all of said treasury warrants, issued as aforesaid, semi-monthly, and aggregating the sum of $356,500, were void and the payments of said warrants were . . . in violation of the Charter and Ordinance of Kansas City, Missouri, and particularly (regulations relating to contracts, payment of claims, purchases, and public lettings) . . .

"10. Plaintiff further states that by reason of the fraudulent plan, scheme and conspiracy, and the fraudulent and unlawful acts in pursuance thereof, as aforesaid, wrongs were done to its property rights and interests, its property, money and assets were diminished, and it sustained damages in the sum of . . .

"Wherefore, plaintiff prays judgment against the defendants herein, and each of them, in the sum of . . . "

Defendants, John J. Pryor and Roy W. Crimm, Executor, filed separate answers denying the conspiracy. Defendant John J. Pryor further stated the Rathford Engineering Company (at times herein referred to as "Company"), in October, 1931, submitted to plaintiff its proposal in writing to make the survey; the proposal was accepted by the acting director of City's water department, who ordered Company to proceed with the work; in response to the accept-

ance and work order, Company entered upon the performance of and performed the work, with full knowledge and consent of plaintiff, from November 1, 1931, until December, 1938, except for a period from December 1, 1933, to November 1, 1934; the acceptance and order, performance of the work, plaintiff's knowledge thereof, and plaintiff's payment of the compensation constituted conduct by which plaintiff is estopped from asserting the invalidity of the contract or its performance; plaintiff City, in the operation of its waterworks system, acted in its proprietary and not its governmental capacity, and in such capacity appropriated money by ordinance and paid for the services performed in compliance with the proposal; and further, plaintiff's cause of action accrued more than five years prior to the institution of the action and, by reason of plaintiff's knowledge of the facts, the action is barred by limitation. Defendant Crimm, Executor, likewise alleged plaintiff, in operating its water department, was acting in a proprietary capacity; averred plaintiff is estopped from asserting the contract was not valid; and pleaded the bar of limitation, and the abatement of the action upon the death of William D. Boyle. Plaintiff replied, traversing defendants' pleas, and specifically denied that it, in operating its water department, had rendered itself amenable as though it were a person acting in an individual capacity.

Plaintiff assigns errors in the giving of instructions requested by defendants, in modifying the principal instruction requested by plaintiff, and in rulings upon the admissibility of evidence. But defendants contend plaintiff did not make out a submissible case. We will first examine this contention. Other questions raised by the parties will be considered in the course of the opinion.

Defendants urge plaintiff stated a cause of action only in deceit and the evidence ▮ failed to uphold an essential element of such a tort action, that is, the falsity of defendants' representations. It is defendants' position that plaintiff failed to show that the invoices rendered (bases of issuance of City's warrants) were false; and that, on the contrary, the evidence showed Company did the work for which the invoices were rendered, and plaintiff received services of value. Plaintiff urges the action is in assumpsit for money had and received, the evidence sustained the essential elements of the action, and the allegations of falsity of representations may be ignored as surplusage.

While technical distinctions, of themselves, between forms of action as cognizable under common law pleading are not considered of moment since the adoption of the code of civil procedure (see Section 916, R. S. 1939, Mo. R. S. A., sec. 916; and see now Sections 35 and 36, Civil Code of Missouri, Laws of 1943, p. 369), the contentions of the parties to the instant action demand that we should endeavor to analyze its nature.

A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful. Shaltupsky v. Brown Shoe Co., 350 Mo. 831, 168 S. W. 2d 1083; Seegers v. Marx & Haas Clothing Co., 334 Mo. 632, 66 S. W. 2d 526. Strictly speaking, there has been no distinct form of writ or action of conspiracy; but the action *sounds in tort,* and is of the nature of an action on the case upon the wrong done under the conspiracy alleged. 11 Am. Jur., Conspiracy, sec. 53, 15 C. J. S., Conspiracy, sec. 21. The gist of the action is not the conspiracy, but the wrong (fraud in our case) done by acts in furtherance of the conspiracy resulting in damage to plaintiff. Shaltupsky v. Brown Shoe Co., supra; Seegers v. Marx & Haas Clothing Co., supra.

It is seen that the plaintiff in its petition of one count alleged no written contract was entered into for the waste-water survey (and no compliance with ordinance provision—it may not be necessary to further directly refer to the latter allegation), and defendants, conspiring to defraud, induced payment by the City from its funds. Also, it is seen, the petition contained allegations that (defendants conspiring to defraud) payment of funds of City was induced by false representations in the invoices rendered.

Inducing the City to pay by false representations, as by presentation of false invoices, would be a means by which fraud, the purpose of the alleged conspiracy, could be accomplished; so would inducing a city to pay from its funds in violation of positive law be a means of accomplishing the fraudulent purpose.

By express mandate of statute, contracts between Kansas City and others (including the consideration), ''shall be in writing . . . and shall be subscribed by the parties thereto, or their agents authorized by law . . . '' Section 3349, supra; and ''No contract . . . shall be binding upon the city unless it be in writing . . . '' Section 92, Article IV, Charter of Kansas City.

Parenthetically, while plaintiff City in operating its waterworks system through the Water Department provided by Charter (Section 25, Article III, Charter of Kansas City) is acting in a proprietary capacity, the legislature of Missouri and the people of Kansas City did not provide that the effect of Section 3349, supra, and Section 92, Article IV, supra, should be limited in its application to those contracts entered into by City in its governmental capacity.

The effect of the failure to comply with these mandatory provisions of statute and charter transcends the effect of the Statute of Frauds, which prohibits enforcement of a contract within its terms, and where part performance ousts the application of the statute. Fleshner v. Kansas City, 348 Mo. 978, 156 S. W. 2d 706. The provisions safeguard against fraud and peculation, and specifically regulate the mode by which the business of a municipality is to be transacted. No contractual obligation is incurred by a Missouri city

in the absence of the writing prescribed. "Under the statute it is as much ultra vires for a Missouri municipality to incur a liability in the nature of a contractual obligation in the absence of a writing as to incur a liability not within the scope of its corporate powers . . . " Donovan v. Kansas City, 352 Mo. 430, 175 S. W. 2d 874, 179 S. W. (2d) 108; and cases therein cited. The contract, absent the prescribed writing, is *void*. The fact a municipality has received the benefit of a performance by the other party does not make the municipality liable either on the theory of a ratification, estoppel or implied contract. Donovan v. Kansas City, supra; Fleshner v. Kansas City, supra; Vol. 3, McQuillin, Municipal ▇ Corporations, 2d Ed., sec. 1283, p. 1159. The case at bar, wherein it was alleged there was no contract in writing, is distinguished from the cases cited by defendants wherein there were mere irregularities in the exercise of a power and wherein fraud was not involved. See Kansas City v. Halvorson, 352 Mo. 280, 177 S. W. 2d 495, for an observation of the distinction.

▇ Under the averments of the petition it seems that, upon a trial, should the evidence show a conspiracy to defraud, but should fail in showing there was no written contract, plaintiff would nevertheless be entitled to recover upon proof supporting a theory that the wrong was effected by false representations. Or should plaintiff prove the conspiracy to defraud, the failure to enter into a written contract (or the failure to comply with the mandatory regulations of ordinances), and payment resulting from the acts in furtherance of the conspiracy, plaintiff would be entitled to judgment, although representations in the invoices were or were not true—the measure of damages upon the latter showing being the amount of moneys paid. Kansas City v. Halvorson, supra. So there were, in our view, in the one count of the petition allegations of fact which, if demonstrated by the evidence, would establish two means by which defendants, conspiring to defraud, defrauded plaintiff. We know of no rule, applicable here, which restricts a plaintiff to one theory of a claim if the facts stated in the petition (and shown by the evidence) are sufficient on more. Defendants have cited several cases in which the substantive allegations of each petition were repugnant to each other, antagonistic and self-destructive, *felo de se*. See, for example, Raming v. Metropolitan St. Ry. Co., 157 Mo. 477, 57 S. W. 268; see now O'Brien v. St. Louis Transit Co., 212 Mo. 59, 110 S. W. 705. Cases are cited wherein it was held the affirmance of a contract or transaction induced by fraud is inconsistent with a disaffirmance or rescission. These cases are not helpful here where there is no inconsistency between the theories of the claim. But, although essential facts supporting two theories of plaintiff's cause of action were alleged, it is necessary to determine if plaintiff made out a submissible case only upon the theory *submitted* to the jury.

1142

Plaintiff's case was submitted by Instruction (modified) Number 1-A, which we set out in the parts which are pertinent here, ". . . The court further instructs you that if you find that William D. Boyle, John J. Pryor, John J. Rathford, or any two of them, did . . . enter into a conspiracy . . . with the purpose and object to cheat and defraud Kansas City . . . out of large sums of money, and if you further find that . . . in furtherance to said plan and conspiracy . . . they formed . . . a company or pretended company, known as the 'Rathford Engineering Company' and . . . if you further find that, pursuant to said conspiracy . . . they prepared . . . invoices for services claimed to have been rendered by . . . Company and submitted . . . such . . . invoices . . . to the director of the water department of the plaintiff, and if you find that, pursuant to said conspiracy . . . the director and other officers . . . placed said . . . invoices in line for payment, and did in due course issue . . . requisitions for the amounts covering said invoices . . . and that treasury warrants of Kansas City, Missouri, were made payable to . . . Company and were issued in accordance with said requisitions . . . and were delivered to . . . Company, and . . . if you further find that said warrants were endorsed by . . . Company and cashed and that the moneys in the amounts specified in said warrants were paid out of the Treasury of Kansas City, Missouri, and were charged to the funds and revenues of its water department; and if you further find and believe from the evidence that there was no contract in writing executed . . . your verdict should be in favor of the plaintiff . . ."

Note that (1) the conspiracy to defraud, (2) the negative of a written contract (the negative of compliance with ordinances was also submitted), and (3) payment of the warrants resulting from acts in furtherance of the conspiracy were the issues submitted. And note that the issue of the falsity of representations, an essential fact to sustain the theory of fraud by means of false invoices, was not submitted to the jury.

But it is contended plaintiff did not make out a submissible case for further reasons (1) there was no proof of the conspiracy alleged and (2) there was no proof defendant Pryor or decedent Boyle received any money paid by plaintiff to Company.

Evidence was introduced tending to prove the following: William F. Fleming, director of City's water department, was sick and confined to his home, and T. D. Samuel, Jr., chief engineer and superintendent of the department, was acting as director most of the time herein mentioned; one McGuire was secretary. In October, 1931, Boyle, in the presence of Pryor, made inquiry of Rathford of the nature of the work of making a waste-water survey. It appears such a survey may be made by aid of a pitometer, in the use of which de-

vice Rathford had some experience. Boyle, in the presence of Pryor, advised Rathford, "We are going to do some of it and want you to do it." An appointment was made for a later meeting at the office of Boyle-Pryor Construction Company, a corporation of which Pryor was secretary-treasurer and Boyle was president, and there Rathford was told of the men who were to help him in making the survey and their salaries; he was advised to "make up" a proposal to City to make a survey for $60,000; Rathford submitted the proposal (written by hand or typed) about October 15, 1931. Stationery printed, "Rathford Engineering Co. City Bank Building Kansas City, Mo.," was supplied by Boyle. "Rathford Engineering Company" was a fictitious name used in the subsequent transactions with city officials and as payee of City's warrants. Company had no office in City Bank Building. Rathford received oral orders to proceed with the work from Clifton M. Kerr, an assistant engineer of the water department. (T. D. Samuel, Jr., testified that he (Samuel) orally directed Rathford to proceed with the work.) Kerr was also carried on the payroll of Company as "Charles B. Kerner" at a monthly salary of $175; and the son of Samuel was on the payroll of Company at $225 per month for a time. Work of making the survey was begun November 1, 1931; thereafter and until June 3, 1938, the date of the death of Boyle (except for a period beginning October 31, 1933, and ending December 15, 1934), monthly warrants aggregating $5000 payable to Company were delivered to Rathford. Warrants in total aggregate sum of $327,500 were so delivered. (Plaintiff announced it did not seek recovery for moneys paid subsequent to the death of Boyle.) Issuance of warrants was effected in the following manner—Rathford would prepare a penciled memorandum twice monthly and place the memorandum in the hands of Marguerite Murphy, bookkeeper and stenographer at the office of Boyle-Pryor Construction Company; Marguerite Murphy would then type "invoices" based upon information contained in the memorandum. The invoices would be presented to the water department by Rathford and approved by Samuel; requisitions would be signed by Samuel and McGuire; a certificate of availability of funds would be procured; and warrants covering the invoices would be issued payable to Company and delivered to Rathford. Generally two warrants were issued monthly in the respective sums of $1500 and $3500. Warrant in the sum of $1500 was deposited in a bank by Rathford to the credit of Company and used to defray expense and meet the payroll of Company. $3500 warrant was delivered to Marguerite Murphy at the office of Boyle-Pryor Construction Company (in some instances Rathford cashed the $3500 warrant and delivered money to Marguerite Murphy). Marguerite Murphy testified that after she had typed and delivered the invoices to Rathford, he would deliver City's $3500 warrant to her "and it happened on a great many occasions they (Pryor and Boyle).

were leaving the office, and Mr. Boyle would say, 'We will take that warrant,' and I would get it out of the safe and deliver it to him. . . . There were times when Mr. Boyle was out of the city when a warrant would come in to me and when I would tell Mr. Pryor he would say, 'Wait until Mr. Boyle gets in.' That is, on occasions when Mr. Boyle was out of the city for just a day or two. When Mr. Boyle was away for longer periods of several weeks at a time, I would hand the warrants to Mr. Pryor.''

We have not stated all the evidence introduced tending to prove a conspiracy to defraud, no written contract as required by statute and charter (and failure to comply with requirement of ordinance), and money paid by plaintiff City, the result of the acts pursuant to the conspiracy. We regard that which we have stated as substantial evidence upon the issues of the submitted theory of the case.

██ ██ Under the case as submitted, in view of the mandates of statute and charter, the giving of Instruction S, requested by defendants, in which the issue was tendered to the jury of whether the plaintiff by its acts and conduct approved, acquiesced in and ratified the making of the waste-water survey, was prejudicially ██ erroneous; likewise the trial court erred in the giving of Instruction P, requested by the defendant Crimm, Executor, by which the jury was told the verdict must be for defendant Crimm "if you find from the evidence . . . that the said John J. Rathford or . . . Company rendered valuable services under an arrangement used by the city as work orders, as testified to, and that the statements presented to the city semi-monthly did not include any untrue statement." And Instructions R and T are erroneous in so far as an issue of the procurance of the payment of the city's funds by false and fraudulent statements (invoices) was submitted. By Instruction K the jury was instructed it is not unlawful to use a fictitious name in the transaction of business, ". . . and that the fact that the name of Rathford Engineering Company was used in this case is not evidence of a wrongful act." While the fact that "Rathford Engineering Company" was a fictitious name was not in itself evidence of a wrongful act, the fact could be considered by a jury in conjunction with other facts and circumstances shown in evidence upon the issues.

██ Evidence of the work actually done by Company in making the survey, or of the amount of savings to City which the survey effected, did not constitute a defense to plaintiff's case as submitted to the jury. But in view of the two theories of the petition, plaintiff having failed to announce, prior to the introduction of such evidence, the theory of the case to be submitted, it is not held that the admission of this evidence was error. Evidence that Pitometer Company, a New York corporation, made, in certain prior years, waste-water surveys for City without written contracts, and evidence of the amounts paid that corporation for making the surveys, was not rele-

vant upon any issue. Proffered testimony of O'Malley, pertaining to the acts of Samuel and McGuire of the water department in connection with the warrants paid subsequent to the death of William D. Boyle, was admissible as tending to show the manner by which all of the invoices, in the furtherance of the conspiracy, had been placed "in line for payment," and the complicity in the conspiracy of City officers and employees as plaintiff had alleged. The exclusion of evidence that corporations, of which defendant Pryor and the decedent Boyle were dominant officers or shareholders, had been paid large sums of money for public works was not error in the absence of a showing that the payments were wrongfully or unlawfully induced.

The trial court was in error in modifying Instruction Number 1-A to limit plaintiff's recovery to moneys paid within five years preceding the institution of the action. The last overt act resulting in damages, upon which plaintiff's case was submitted, occurred within the limitation period, five years (Sections 1012 and 1014, R. S. 1939, Mo. R. S. A., secs. 1012 and 1014), prior to the institution of the action, and to the filing of amended petitions by which defendant Pryor and defendant Crimm, Executor, were made parties defendant. It is held the period of limitation commenced upon the occurrence of the last of the series of overt acts (resulting in damage) under the conspiracy. State ex inf. Attorney General v. Arkansas Lumber Co., 260 Mo. 212, 169 S. W. 145; 34 Am. Jur., Limitation of Actions, sec. 162; 97 A. L. R. 152.

There is no merit in the contention of defendant Crimm, Executor, that plaintiff's claim, if established, did not survive the death of decedent Boyle. Section 98, R. S. 1939, Mo. R. S. A., sec. 98; Foster v. Hesse (Mo. App.), 43 S. W. 2d 891, and cases therein cited.

The cause should be reversed and remanded.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.

## ON MOTION FOR REHEARING.

PER CURIAM:—Defendants say the ruling that the measure of damages would be "the amount of moneys paid" (upon proof of the conspiracy, the failure to enter into a written contract and payment resulting from the acts in furtherance of the conspiracy) is not "good law" and is in conflict with a multitude of decisions dealing with the measure of damages in tort actions. Defendants urge it is indisputable that, once it be conceded this is an action for conspiracy to cheat and defraud, the plaintiff is entitled to recover all moneys paid "less benefit received." Defendants have cited ▉▉▉ many cases, actions of deceit, of which the case of Gash v. Mansfield (Mo. App.), 28 S. W. 2d 127, is an example, wherein it is held damages

must have resulted to the plaintiff from the deception, and the measure of recovery is the actual damages suffered by plaintiff. None of the cases are applicable to the submitted theory of plaintiff's case in the instant action, an action of conspiracy wherein there has been an alleged failure to comply with the mandatory provisions of statute and charter which, as we have said, safeguard against fraud and peculation and specifically regulate the mode by which the business of a *municipality* is to be transacted. We think it is apparent from the cases cited in our opinion, supra, that no legal benefit could be conferred by work done by defendants for plaintiff, a municipality, under a contractual relationship which was void because in violation of the mandatory provisions of the statute and charter. It would not be ''good law'' were it held that the purpose of the statute and charter may be circumvented and a recovery wholly or partially defeated where acts of defendants were pursuant to a conspiracy upon which, perforce, a plaintiff municipality, in order to recover of the conspirators, must institute an action sounding in tort.

Motion for a rehearing, for a modification of the opinion and to transfer the cause to the Court en Banc is overruled.