In the Matter of the ESTATE of O. G. BALLARD, Deceased, Helen Ballard, Administratrix, Appellant,

v.

CLAY COUNTY, Missouri, L. M. Bywaters, Willard Payton, and Tate Chiles, Judges of the County Court of Clay County, Missouri, Respondents.

No. 48927.

Supreme Court of Missouri,
Division No. 1.
April 9, 1962.

Williams & Norton, North Kansas City, John Lodwick, David Lodwick, Excelsior Springs, for appellant.

Robert E. Coleberd, Hale, Coleberd, Kincaid & Waters, Liberty, for respondents.

HOLMAN, Commissioner.

This discovery of assets proceeding was originally instituted in the Probate Court of Clay County, Missouri, on January 11, 1954, by the filing of an affidavit by the administratrix of the estate of O. G. Ballard, deceased. The parties alleged to be wrongfully withholding assets of the estate were Clay County, Missouri, and the judges of its county court, Boude Crossett, Curtis Hall, and Ford White. Upon the filing of an affidavit alleging that the probate judge was a material witness in the cause the proceeding was transferred to the Circuit Court of Clay County and thereafter, upon the granting of a change of venue, was sent to the Circuit Court of Clinton County. Prior to trial the successors in office of the county judges named in the affidavit were substituted as parties defendants. A trial before the court (a jury being waived) resulted in a judgment for defendants and the administratrix has duly appealed therefrom. We have appellate jurisdiction because Clay County is a party. Art. 5, Section 3, Constitution of Missouri 1945, V.A.M.S.

We will hereinafter refer to appellant as plaintiff and to respondents as defendants.

The controversy in this case is based upon an alleged contract entered into between O. G. Ballard and Clay County on December 7, 1948. Mr. Ballard, then 75 years of age, had formerly been a judge of the Clay County Court. The said agreement reads as follows:

"This agreement made and entered into this 7th day of December, 1948, by and between O. G. Ballard, hereinafter referred to as party of the first part, and the County of Clay in the State of Missouri, acting through and by the Judges of the County Court of Clay County, Missouri, hereinafter referred to as parties of the second part,

"Whereas, O. G. Ballard, party of the first part, has requested that the County Court permit him to live at the County Home of Clay County Missouri; and whereas, said party of the first part is well able to pay the County of Clay for his maintenance and lodging at the County Home; and whereas, there is plenty of room in the County Home of Clay County, Missouri for said party of the first part.

"Now therefore, in consideration of the premises and the sum of Ten Thousand and No/100 Dollars ($10,000.00), the receipt of which is hereby acknowledged by the parties of the second part, it is agreed by and between the parties hereto as follows:

"1. The party of the first part shall be permitted to move into the County Home and should he become dissatisfied at said home and desire to move, then the parties of the second part shall, after deducting from said above-mentioned sum of Ten Thousand Dollars the actual cost of maintaining and providing for said party of the first part during the time that he is in said home, pay over the balance to said party of the first part.

"2. If party of the first part should die while residing in said County Home, the entire sum of Ten Thousand Dollars shall immediately upon the death of the party of the first part, become the property of party of the second part.

"3. This agreement shall remain in full force and effect for a period of two years from the date of the signing hereof and may be renewed upon the same terms provided that it is agreeable to both parties."

In accordance with said agreement O. G. Ballard paid $10,000 to Clay County and entered the "County Home" on December 8, 1948, and resided there continuously until April 8, 1952, the date of his death.

In her affidavit plaintiff alleged that the aforementioned contract "was illegal and in violation of the public policy of the State of Missouri." The interrogatories filed in this cause and the answers of defendants thereto are as follows:

"1. Did you, or either or any of you, at the time of the issuance of the citation herein on January 11, 1954, have in your possession or under your control any money, credits, or property of O. G. Ballard, deceased, or of his estate? If so, state what money, credits or property you, or any of you, held and specifically describe it. Answer: The answer to Interrogatory No. 1 is NO as to each and all of respondents.

"2. Did you, or any of you, at the time of the issuance of the citation herein on January 11, 1954, owe to O. G. Ballard, deceased, or to his estate, any indebtedness of any kind or character? If so, state the amount and origin of such indebtedness and the date of the maturity thereof. Answer: The answer to Interrogatory No. 2 is NO as to each and all of respondents.

"3. Did you, or any of you, under contract dated December 7, 1948, between O. G. Ballard and the County of Clay, in the State of Missouri, receive from said O. G. Ballard in his lifetime the sum of $10,-000.00 under an agreement with said O. G. Ballard that he would be permitted to move into the County Home of said County? If said sum, or any sum, was so received from said O. G. Ballard, state the amount thereof, the consideration therefor, the amount, if any, expended on behalf of said Ballard, the amount, if any, remaining unexpended and under whose custody or control said unexpended sum, if any, remains. Answer: The joint and separate answer of respondents Bywaters, Chiles and Payton to relator's Interrogatory No. 3 is No. The answer of respondent Clay County, Missouri, to said Interrogatory No. 3 is that said respondent has no knowledge or information about the matters suggested in said interrogatory excepting only such as appear in the public records of Clay County, Missouri, at the court house in Liberty in said county and which are readily available for inspection and examination by any citizen and taxpayer in Clay County, including relator."

At the trial plaintiff offered considerable evidence, over the objection of defendants, tending to show that Mr. Ballard was physically and mentally weak on December 7, 1948, and that he did not possess the mental capacity to understand the contract he signed on that date.

It was the view of the trial court, as indicated by its "Memorandum and Judgment," that plaintiff could not prevail until and unless the contract is set aside and that "the court in this case sits as a probate court and has no broader jurisdiction on transfer or appeal than the probate court," and "the court cannot exercise equity powers in this action at law to provide relief by way of passing on the validity of a contract or setting aside a contract." The court therefore held that "all evidence taken on the validity of the contract in evidence or bearing on the mental capacity of deceased, is incompetent and inadmissible" and "the competent and admissible evidence fails to show that defendants or any of them have concealed or wrongfully withheld assets of the decedent belonging to the estate of O. G. Ballard, deceased."

The evidence relating to the mental incapacity of decedent was evidently offered by plaintiff in support of an alternate contention, as plaintiff contended in the trial court and here contends, that the alleged contract was void on its face. In her brief she states that "it is the plaintiff's position that the contract between the deceased and Clay County was a void contract and that this suit was in the nature of money had and received by payment under a void contract. * * * In this case there never was a contract between the County of Clay and the deceased. Therefore, we should first examine the is-

sues in this case to determine if equitable relief has been sought. This is not an action for the cancellation or reformation of an instrument, or for specific performance, nor any other of the types of extraordinary relief asked for in equity suits. Here the suit is for money which is purely an action at law. Our remedy at law is adequate and we do not have any desire to invoke the jurisdiction of equity, nor would we have the right because the remedy at law is adequate and precludes equitable relief."

It is our opinion that this contract was void and hence could be brushed aside and disregarded without the necessity of invoking the powers of equity to set it aside. In that situation we need not determine whether the trial court, under the circumstances here presented, had the jurisdiction to invoke equitable powers and set aside the alleged contract.

Section 3349 (unless otherwise indicated all statutory references in this paragraph are to RSMo 1939, and all such sections were in effect on December 7, 1948) provided, in part, as follows: "No county * * * shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law * * *" (now Section 432.070, V.A. M.S.). Section 9590 (now Section 205.-580, V.A.M.S.) provided that "Poor persons shall be relieved, maintained and supported by the county of which they are inhabitants," and Section 9591 (now Section 205.-590, V.A.M.S.) stated that "Aged, infirm, lame, blind or sick persons, who are unable to support themselves, and when there are no other persons required by law and able to maintain them, shall be deemed poor persons." Sections 9597 and 9598 (now Sections 205.650 and 205.690, V.A.M.S.) provided that the county court could erect a convenient poorhouse and appoint a fit person to superintend the same and the poor who may be kept therein.

■ It seems clear from the statutes referred to in the preceding paragraph

that the county was authorized to maintain and operate a poorhouse in order to provide a residence for poor persons, i. e., persons unable to support themselves. No statute or case has been cited which indicates that the county was authorized to operate its poor farm as an inn or nursing home to be used as a residence by persons (such as Mr. Ballard) who were able to pay (and would pay) the county an agreed amount for the privilege of residing therein. We have searched the statutory and case law of this state and find no authority for the county to conduct a business enterprise of that nature. It is an established rule that the "authority of a county board to make contracts is strictly limited to that conferred, either expressly or impliedly, by statute, regardless of benefit to the county or of value received * * *." 20 C.J.S. Counties § 174, pp. 1006, 1007. Also, as provided in Section 3349, supra, counties are expressly prohibited from making any contract unless within the scope of its powers or expressly authorized by law. The instant contract, being unauthorized, was void. See cases cited in annotations to Section 432.070, V.A.M.S., supra; State ex rel. Eubanks v. Board of Commissioners of Sedgewick County, 150 Kan. 143, 91 P.2d 2; Bradford County v. Nuveen, 5th Cir., 133 F.2d 169. Said void contract provides no protection to Clay County in the retention of the money paid by Mr. Ballard. And that is true even though the contract is not set aside. Benton County v. Morgan, 163 Mo. 661, 64 S.W. 119; Faris v. Moore, 256 Mo. 123, 165 S.W. 311. The county, having obtained the money under a void contract, can be required to make restitution. It has been said that "the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution * * *." Marsh v. Fulton County, 10 Wall. 676, 19 L.Ed. 1040, 1043.

■ In a proceeding of this kind the issues are made up by the interrogatories

and the answers thereto. In re Lipic's Estate, 362 Mo. 623, 243 S.W.2d 100. It appears, in effect, from plaintiff's third interrogatory that she sought to recover only the balance of the $10,000 remaining after deducting the amount expended in support of Mr. Ballard during the time he remained in the County Home. That is right and just. We note that Clay County did not answer that part of the interrogatory nor did it offer any evidence as to the reasonable cost of the support furnished decedent. However, under the circumstances of this case, we are of the opinion that said defendant should be afforded another opportunity to present such evidence, and that the amount found by the court to be the reasonable cost of said support should be deducted from the amount paid by Mr. Ballard in computing the amount of the judgment to be entered for plaintiff. Our mandate will so provide.

■ Defendants have briefed the point that the judgment should be affirmed because the present members of the county court were not substituted as parties defendants for the county judges named in the original affidavit within one year after the original defendants had ceased to hold office. See Section 507.100(5), RSMo 1959, V.A.M.S. We do not think there is any merit to that contention for the reason that the judges of the county court are not necessary parties to this action. The real party in interest is Clay County. In that situation it would seem to be immaterial whether there was a timely substitution of the successor judges.

■ It is also the contention of defendants that the trial court did not have jurisdiction of this proceeding because plaintiff had not complied with the statutory procedure by examining defendants under oath before filing written interrogations. Section 473.343, RSMo 1959, V.A.M.S., provides that "If the party cited does not admit the allegations in the affidavit, he shall be examined under oath, after which, at the instance of the administrator or executor, other witnesses may be examined both for and against such party; but before the other witnesses are examined, interrogatories shall be filed in writing, to be answered also in writing by the party cited." However, it is not a jurisdictional requirement that the person named in the affidavit be orally examined under oath. That provision is for the benefit of affiant and may be waived. In 4 Maus, Missouri Practice, § 877, p. 185, it is said that "If the defendant does not admit the allegations of the affidavit, he may then be examined under oath. At one time the affidavit and oral examination made up the issues and the oral examination was an essential step in the proceeding. It is no longer so, the issues are framed by the written interrogatories and answers. However, the affiant may yet elect to so examine the defendant. By doing so he has the advantage of the information gained to use in framing the actual issues by his interrogatories. On the other hand by such an examination the objection to the defendant's competency under the 'dead man's statute' has been waived. For this reason, the oral examination is usually declined." We accordingly rule this point adversely to defendants.

The judgment is reversed and cause remanded with directions to the trial court to hear evidence upon the sole issue as to the reasonable cost of the support furnished Mr. Ballard during the time he resided in the county home; that the sum so determined be deducted from the amount paid by Mr. Ballard ($10,000), and that a judgment be entered for plaintiff and against defendant Clay County for the balance so determined. The judgment should be in favor of the other defendants.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.