C. Kenneth THIES, Appellant,

v.

ST. LOUIS COUNTY, Missouri, a Municipal
Corporation, Respondent.

No. 51387.

Supreme Court of Missouri,
Division No. 2.

May 9, 1966.

A. H. Hamel, Clayton, for appellant.

Donald J. Stohr, St. Louis County Counselor, Joseph B. Moore, Deputy County Counselor, John J. Collins, Asst. County Counselor, Clayton, for respondent.

STOCKARD, Commissioner.

In this suit in equity by C. Kenneth Thies against St. Louis County for rescission of a deed of conveyance of real estate, the judgment was for defendant and plaintiff has appealed.

In 1950 plaintiff acquired approximately ten acres of unimproved land in St. Louis County, and immediately upon acquisition he transferred three and one-half acres to a person named Ball. He subsequently conveyed two tracts to persons named Diener and Israel, leaving plaintiff a tract consisting of .968 acre. In 1960 it became apparent that plaintiff's land would be taken for the construction of what is known as the Inner Belt Highway. In July of that year plaintiff wrote to Mr. Ray Julius, who was handling the acquisition of land for the Inner Belt Highway, and requested that he confirm that plaintiff's land would be taken. Plaintiff stated that he intended to reinvest the proceeds received for his land in other land in St. Louis County, but that "in order to hold on to the deal I will not be enabled to wait indefinitely to accommodate the normal delays of appraisal, negotiations, etc. with regard to the property to be taken for highway purposes." Following this there were negotiations between plaintiff and Mr. Julius. In the early part of 1961 appraisals of plaintiff's property were made by two persons employed by St. Louis County. The "comparative approach" method of valuation was used, and each appraiser determined the value to be 50¢ a square foot. The total value was stated by one appraiser to be $20,500 and by the other to be $20,475, the difference apparently resulting from a variance in the estimated number of square feet. Appraisals also were made of the Diener and Israel tracts. The Diener tract adjoined that of plaintiff but was approximately one half as large, and like plaintiff's tract it was being taken in its entirety. Each appraiser found that it had a value of 50¢ a square foot, but again the total value found by each appraiser varied a few dollars. The report of only one appraiser as to the Israel property is shown. That property consisted of 3.5 acres and contained some improvements in the form of buildings and fencing. Slightly more than one acre was to be taken for the highway, but apparently the buildings were not to be disturbed. The land to be taken was valued at 60¢ a square foot. The total appraised value of $29,728 for the property taken included $691 for fencing. Whether or not plaintiff knew the contents of the reports of the appraisers for the Diener and Israel properties is not shown, but Mr. Julius made an offer to plaintiff to purchase his property for $21,500, less accrued taxes in the amount of $19. This offer was based on 105% of the average of the two appraisals. As subsequently noted, plaintiff accepted

this offer. There was no appraisal of the Ball property until May 20, 1962.

The substance of plaintiff's testimony is that he did not desire to enter into litigation with St. Louis County, but that he wanted to be certain that the offer made to him was the highest that would be made to either Ball, Israel or Diener, and that they would receive no more for their land except as the result of condemnation proceedings. Plaintiff testified that Mr. Julius said, "You have my word on it. These men will not * * * profit by being holdouts. I am offering you the maximum that is going to be paid, short of condemnation." Plaintiff further stated that he told Mr. Julius that he "would accept the sum of $21,492 for the .968 acres on the strict provision that this was going to be the top paid any one of the four of us, namely, Thies, Israel, Diener, and Ball; that if, on the other hand, these other gentlemen were going to profit and receive anything in excess of 50¢ a square foot merely by dragging their feet and holding out, then I wanted no part of the transaction."

On March 29, 1961, plaintiff executed a general warranty deed in conventional form conveying the .968 acre to St. Louis County for the recited consideration of "one dollar * * * and other valuable considerations," but for which he received $21,492. This deed contained no reference to what plaintiff contends were the promises of Mr. Julius that Ball, Israel and Diener would be offered no more than 50¢ a square foot. Plaintiff testified that in 1963 he learned that subsequent to March 29, 1961, St. Louis County had offered to purchase the land of Ball, Israel and Diener at prices in excess of the basis of 50¢ a square foot. It was developed at the trial that the Diener property was acquired by St. Louis County on June 27, 1963, for $18,969. This apparently was a negotiated price and amounted to approximately 92¢ per square foot. Condemnation proceedings were brought on February 13, 1964 to acquire the Ball and Israel properties. At the time of trial of this suit the condemnation proceedings were still pending as to the Ball property, but in 1963 St. Louis County made an offer to purchase which amounted to 72¢ per square foot. The precise status of the Israel property at time of trial is not clear, but the County either offered or paid an amount equal to $1.07 per square foot.

Mr. Julius testified that after the 1961 appraisals were made of the Diener and Israel properties he made offers to purchase the property on the basis of 105% of the average of the appraised values, and that subsequently a similar offer was made to purchase the Ball property. The report of only one appraiser is shown for the Ball property which was made on May 20, 1962, and in it the value was stated to be 50¢ a square foot. All these offers were turned down. When asked if he and plaintiff in their negotiations "were dealing with the figures that would stand absent condemnation," Mr. Julius replied, "At that time, yes." He further stated that in late 1962 or early 1963, subsequent to the purchase of plaintiff's property, it was discovered that there was an easement affording access from a road to the Ball property, and when told by his appraisers that this could affect the value of the land, he asked for a new appraisal. He further testified that in his opinion there had been a recent advancement of land values in the area resulting from the construction of a nearby shopping area and "recent land market activity," and because of this he felt that "in order to be fair to everyone concerned" there should also be new appraisals made of the Israel and Diener properties. The new appraisals resulted in a substantial increase in the appraised values. For example, according to one appraiser, the value of the Israel property had increased from $29,728 to $61,000; the value of the Ball property had increased from $97,250 to $194,500; and the value of the Diener property had increased from $10,400 to $20,800.

The trial court entered judgment "against plaintiff and in favor of the defendant." No findings of fact and conclusions of law were requested, and none were made.

Plaintiff's first point is that the trial court "failed to enforce the collateral commitment which was part of the consideration due plaintiff-appellant for the sale of appellant's .968 acre conveyed to County-respondent." In sub-points he asserts that he "was entitled not only to the cash consideration agreed upon * * * but also entitled to the fulfillment of a promise made as contained in the collateral oral agreement," and that the county is not entitled to take and retain his property "and then repudiate the oral commitment" made by it upon which the transaction was built and which induced him to enter therein. By his petition plaintiff does not seek "to enforce the collateral commitment" or to obtain the "fulfillment" of an oral promise. He seeks to have rescinded the deed executed by him conveying the land to the county. We further note that the land in question was conveyed to the county to be used for the construction thereon of a public highway. From the record we cannot determine whether the highway has been or is in the process of being built, but more than five years have elapsed since the conveyance. Plaintiff has offered to return the $21,492, but we consider it a serious question, regardless of the merits of his claim, whether a court of equity should exercise its discretion to restore to plaintiff title to a portion of a public highway. Also what plaintiff is in fact seeking is not to have the parties restored permanently to their original positions, but he seeks to obtain more money for his land. Apparently his theory is that if title is restored to him he can then negotiate for a higher price or be awarded more money by a jury in a condemnation proceeding. Since the ultimate objective is to obtain more money, such relief to which plaintiff is entitled, if any, is not ordinarily a matter for equitable relief. The remedy is at law. However, neither of these contentions is advanced by the county in its brief to this court. We shall, therefore, consider the specific points presented by plaintiff.

Plaintiff's position in his point is that aside from the agreement that the price to be paid to him for his land was to be $21,-492, there was a *collateral oral agreement* between him and Mr. Julius acting by and on behalf of St. Louis County that an offer by St. Louis County to purchase the Diener, Israel and Ball tracts on a basis of more than 50¢ a square foot would not be made. Plaintiff apparently takes the position that this was a separate oral agreement apart from the agreement between the parties expressed in the deed in order to avoid the application of the general rule that "Prior and contemporaneous negotiations and oral understandings of the contracting parties are said to merge into their written instrument and, with certain exceptions, that instrument cannot be varied, and a new and different contract substituted therefor, by parol testimony." Fisher v. Miceli, Mo., 291 S.W.2d 845, 848. See also Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817; Giraldin Bros. Real Estate Company v. Stiansen, Mo.App., 315 S.W.2d 636. Plaintiff cites and relies principally upon Rackemann v. Riverbank Imp. Co., 167 Mass. 1, 44 N.E. 990 and Caveny v. Curtis, 257 Pa. 575, 101 A. 853. These cases, except for a factor subsequently mentioned lend support to plaintiff's theory. He also cites Scott v. Asbury, Mo.App., 198 S.W. 1131; Aull Savings Bank v. Aull's Administrator, 80 Mo. 199; Corn v. McDowell, Mo.App., 185 S.W. 235; Hart v. Riedel, Mo.App., 51 S.W.2d 891; Owsley v. Jackson, 163 Mo.App. 11, 144 S.W. 154; and Wilson v. Wilson, 115 Mo.App. 641, 92 S.W. 145. It may be said that except for the same factor subsequently mentioned, these cases by analogy lend some support to plaintiff's theory. However, we need not examine their rational nor set forth their basic rulings. It is sufficient to say that none of them pertains to a comparable factual situation where an alleged collateral oral agreement was entered into with a county or some other governmental subdivision referred to in Section 432.070, Mo.Rev. Stat.1959, V.A.M.S. That statute is as fol-

lows: "No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

■■■ In this case the alleged collateral agreement, the breach of which plaintiff relies as a basis for rescinding the deed, is admitted to have been oral and never reduced to writing. The terms of this statute are expressly made applicable to counties, and the requirement that the terms of contracts therein referred to be in writing has consistently been held to be mandatory and not merely directory. Donovan v. Kansas City, Missouri, 352 Mo. 430, 175 S.W.2d 874, 179 S.W.2d 108; County of St. Francois v. Brookshire, Mo., 302 S.W.2d 1, 4. Also, it has expressly been held that an oral contract "in violation of this statutory provision is void ab initio and cannot be rendered valid after the services are performed or work done." County of St. Francois v. Brookshire, supra; Fleshner v. Kansas City, Missouri, 348 Mo. 978, 156 S.W.2d 706. All persons are charged with knowledge of the powers of counties, the authority of their officers and agents, and the manner prescribed by statute for the exercise thereof. For analogy see Fulton v. City of Lockwood, Mo., 269 S.W.2d 1; and Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 179 S.W.2d 108, appeal dismissed 322 U.S. 707, 64 S.Ct. 1049, 88 L.Ed. 1551. "Since municipal corporations [and counties] represent the public, they are to be protected against the unauthorized acts of their officers, and the courts unhesitatingly should enforce compliance with all mandatory provisions of the statutes designed to protect municipalities [and counties] and their in-

habitants." Grauf v. City of Salem, Mo. App., 283 S.W.2d 14, 17; Bride v. City of Slater, Mo., 263 S.W.2d 22, 26.

■■■ While plaintiff does not seek to enforce this void contract or to obtain damages for its breach, he does seek to establish the existence of the collateral oral agreement, and then establish a breach of it by St. Louis County to provide the basis for rescinding the deed. However, the alleged oral agreement is void for all purposes, and there can be no breach of a void agreement. If we assume that it is established by the evidence (but we do not so hold) that plaintiff and Mr. Julius entered into a collateral oral agreement as plaintiff contends, that agreement was void ab initio, and being so it cannot now be relied on by plaintiff for any purpose.

Plaintiff asserts in his reply brief that he will agree that "the contractual relations between the parties" are void, and that he wants "all of the contract" declared void. However, in making this assertion he impliedly refutes his premise in his principal brief, that is, that the oral understanding concerning the offers to be made to Ball, Israel and Diener constituted a "collateral commitment" or a "collateral oral agreement." If we consider, as plaintiff urges in his reply brief, that there was but one agreement or contract, then the general rule, previously mentioned, becomes applicable, and all contemporaneous negotiations and understandings of the contracting parties are considered to merge into the written instrument. See the cases cited supra.

■■■ Plaintiff next makes in his reply brief what he calls an "in passing" observation that the County of St. Louis ignored Civil Rule 55.10, V.A.M.R., in its "belated reliance on the 'avoidance and affirmative defense' allegedly afforded under Section 432.070" because there was no mention of it in its pleadings or its testimony. We doubt that it may fairly be said that plaintiff pleaded the existence of and then a breach of a collateral oral agreement as the basis for rescinding the deed. At least there

were no specific allegations to that effect. We do not know what theory was argued to the trial court. Neither do we know the basis of its judgment. In plaintiff's motion for new trial there is no reference to a collateral "commitment" or "oral agreement." If plaintiff is entitled to rely on such commitment or agreement in his point to this court, the county is entitled to call the attention of the court to the statute to sustain the judgment entered by the trial court.

Plaintiff's second and remaining point is that "the evidence disclosed that all of the negotiations of the parties were pursued under a mutual mistake of fact in that a cross-easement to [plaintiff] was ignored; while [the county] simultaneously insists the concomitant cross-easement justified reappraisal of the Ball tract and a 100% increase as to valuation." In his brief plaintiff states that "It should be recognized that this 'theme' was an injection solely motivated by the county's excuse that a mistake of fact had warranted the reappraisals of the neighboring parcels by reason of a failure to consider a cross-easement to the Ball tract."

Plaintiff testified that "way back there [in "the early fifties"] when we parceled off the Israel tract Mr. Ball said he would like to retain a little right-of-way out to Gay Avenue [not an opened street] in the event he would ever want to use it. * * * I said to Ball, 'Well, if you want a little easement-way out through this property * * * then I want an easement-way out clear across your tract in the event they ever build the Rock Island bypass which has been talked about for 20 years, since 1945 * * *.' So we made a mutual agreement that he could have a way out to Gay Avenue over my parcel, and I could have a way out over the Rock Island bypass, if it was ever built, over his parcel. And nothing was ever done about either one."

At the time of the negotiations with Mr. Julius, plaintiff had personal knowledge of the existence of the easement appurtenant to his land. Yet, with that knowledge he testified that he considered the price offered to him for the purchase of his land to have been "a fair price if he [Mr. Julius] kept his promise" not to offer other owners a higher price. However, this promise could have had no bearing on the fairness of the price offered to plaintiff.

■■■ The cancellation or rescission of a deed is the exercise of the most extraordinary power of a court of equity, and this power ought not to be exercised except when clearly justified from a consideration of all the evidence in the case, Walton v. Van Camp, Mo., 283 S.W.2d 493, 500, and the burden of showing the basis therefor rests upon the person seeking the relief. Edinger v. Kratzer, Mo., 175 S.W.2d 807. A mutual mistake to warrant the cancellation or rescission of a deed must relate to the existence or non-existence of a fact, past or present, material to the transaction, and not as to a future contingency. The mistake must be as to a matter of fact, not as to a matter resting in mere conjecture or belief, and it must appear that knowledge of the fact would have prevented the execution of the deed. See 13 Am.Jur.2d Cancellation of Instruments § 31; 26 C.J.S. Deeds § 55. Compare Jennings v. Metropolitan Life Ins. Co., Mo.App., 166 S.W.2d 339, 344. Plaintiff does not deny that the price offered him at the time was a fair price. He personally knew of the easement appurtenant to his land. He also knew, or should have known, that it was not mentioned specifically in the report of either appraiser. In connection with his reliance on the reports of the appraisers, he testified that "There is no yardstick to determine what is fair. We know that property will either bring what somebody is willing to pay or what some court is willing to give and that is the only yardstick you've got, and Mr. Julius knows and I do, and you know that appraisals frequently vary 400 to 500 per cent." From these facts and circumstances we cannot find a mutual mistake of fact, as distinguished from a difference of opinion or belief as to the value of the property at the time of negotiations and two

years later when the opinions are affected by hindsight. Any mistake of the parties pertained only to value, and that rested in conjecture and belief. The circumstances of this case do not warrant the exercise of the extraordinary power of a court of equity to rescind the deed, the terms of which were freely negotiated with no fraud or concealment by adults experienced in the business at hand, and who were charged with knowledge of the limitations on the powers of a county and its agents.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.