**FULTON NATIONAL BANK, a National Banking Association, Appellant,**

v.

**The CALLAWAY MEMORIAL HOSPITAL, and Earl S. Kennett, Frederick R. Rosser, Robert A. Briggs, Christy Krebs and David Haden, Trustees of the Callaway Memorial Hospital, Respondents.**

No. 55294.

Supreme Court of Missouri, Division No. 2.

April 12, 1971.

**550**

Frank B. Edwards, Edwards, Seigfreid & Runge, Mexico, for appellant.

C. E. Hamilton, Jr., Fulton, for respondent.

HENRY I. EAGER, Special Commissioner.

Plaintiff, in a third amended petition, sought recovery of $26,404.35, plus interest and attorneys' fees, from the Callaway Memorial Hospital and its trustees. Suit was first instituted on March 15, 1967. The first count was upon various notes which the hospital had allegedly endorsed; the second count was for money had and received, supposedly accruing because of money paid for the purchase of the same notes. The trial court sustained the motion of defendants to dismiss both counts for failure to state a cause of action, which we construe as the failure to state a claim on which relief can be granted. Originally plaintiff also sued Callaway County and the three Judges of the County Court, but those defendants were dropped after the sustaining of their motion to dismiss.

It was alleged in count 1: that the hospital was "organized as a county hospital by the County of Callaway, Missouri"; that between November 18, 1962, and December 31, 1964, plaintiff purchased from the hospital, prior to maturity, sundry notes executed by individuals "payable to the order of Fulton National Bank" and endorsed with recourse by the hospital by its authorized representatives; that the notes were prepared by the hospital's representatives and that a list of the notes (62 in number), with the amount of each, the dates of purchase, and the balance due on each, was attached to the petition as an exhibit; that the consideration for the notes was deposited to the credit of the hospital, at its request, in plaintiff bank (but at no place is the amount of consideration stated); that such notes were the property of the hospital and that they were sold under the authority of "the statutes of Missouri" (citing none); that each note was presented to the maker at maturity, demand made, and payment refused, and that plaintiff thereafter gave notice and made demand upon the defendants on December 31, 1964, and also made formal claim, which was rejected. Copies of the various notes were also attached as exhibits. It was further alleged: that the balance due on all said notes, including interest to December 31, 1964, was $26,404.35, for which sum plaintiff prayed recovery, with 8% interest and attorneys' fees of $5,300, at $100 per note. (There seems to be a discrepancy between the petition and the exhibit as to the number of such notes, but this is immaterial.)

In count 2 plaintiff, as an alternate cause of action, alleged: that it incorporated the allegations of count 1 concerning the parties; that on February 10, 1961, plaintiff entered into a written agreement with the hospital for the purchase of sundry notes held or to be held by the hospital, that the agreement was approved by the hospital trustees, and that a copy was attached as

"Exhibit BN"; that thereafter defendants delivered and sold to plaintiff "prior to maturity and for a valuable consideration * * * with recourse" numerous notes, of which a list was attached to the petition as "Exhibit A"; that the consideration was deposited to the credit of the hospital and was used by defendants for its authorized purposes; that "of the purchase price" the sum of $26,404.35 with interest from December 31, 1964, remains due and is "retained" by defendants; that demand has been made for the return of this money, but it was refused; that plaintiff complied with the "terms of the contract," but defendants contend that the contract was void and illegal; that it is "inequitable and unjust for defendants to retain said money"; that plaintiff tenders into court all notes which have an unpaid balance, and it seeks a "return" of $26,404.35, with interest at 8% since December 31, 1964.

The agreement referred to (dated one year and nine months before the first date of purchase here relied on) recited that plaintiff agreed to purchase "certain notes" upon various conditions stated, among which were: that notes should carry an "add-on-rate" not to "exceed bank notes"; that the notes should be payable in monthly instalments; that the bank should set up for the hospital a "reserve account" (more fully explained) to cover losses which might be sustained by the bank, against which delinquencies should be charged, on certain further conditions. The agreement is noteworthy principally for its vagueness; not even the purchase price is stated or, put another way, the percentage of discount. The agreement covers "certain notes" of not less than $75.00 face value.

Copies of sundry notes, dated in 1962, 1963 and 1964, all payable to Fulton National Bank in varying amounts, were attached to the original petition with notations of sundry payments. They were endorsed in the name of Callaway Memorial Hospital either by its office manager or its administrator.

Plaintiff's position on the first count is that the Court erred in dismissing that count because a cause of action was stated as to the "defendants" as endorsers without qualification, since the hospital received value and was not an accommodation party. We consider that point first. If the statutes on negotiable instruments were applicable, the old law, Chapter 401, RSMo 1959, V.A. M.S., would apply, for the Uniform Commercial Code was not effective until July 1, 1965. We do not reach a construction of those statutes, nor is it material that the hospital was allegedly an endorser for value. The hospital, as a county entity, had no authority whatever to incur liability as an endorser on such notes. The distinctions which plaintiff discusses as between an irregular endorser (§ 401.064) and a general endorser (§ 401.066) and also between general and accommodation endorsers are immaterial here, for the hospital had no authority to endorse with recourse under any circumstances. Plaintiff does not discuss the latter point, which is decisive.

■ The hospital, alleged to be an instrumentality of the county, had no authority to incur any indebtedness, contingent or otherwise, unless permitted to do so by statute. We may take judicial notice that Callaway is a county of the third class. If the county itself may not incur a certain type of indebtedness, certainly its creature may not do so. Section 50.070, RSMo 1959, 1969, V.A.M.S. provides the manner in which such a county may incur indebtedness, i. e., by the issuance by the county court of tax anticipation notes payable out of county revenues for that year, and upon certain fixed conditions.

Generally, any county may only become indebteded in an amount exceeding the income and revenue for the current year, by a vote of two-thirds of its electors—§ 108.-010, RSMo 1959, 1969, V.A.M.S. And, by virtue of Article VI, Section 25, Missouri Const.1945, V.A.M.S. no county may "lend its credit" to any private individual, or become indebted except as already indicated in § 108.010 (Article VI, Section 26(a)).

Section 432.070 provides that no county shall make any contract unless it be within the scope of its powers or be expressly authorized by law. It is not within the scope of a county's powers to guarantee the debt of another.

■ It is really hornbook law that neither a county nor any instrumentality of a county may contract any form of indebtedness, absolute or contingent, except such as is permitted by statute. We are cited to no authority which would permit a county instrumentality to endorse, with recourse, notes of third parties. The hospital is sued here upon its endorsements. It had no authority to make them, and they are ultra vires and void. Certain of the authorities which we cite on count 2 are applicable here, but they will only be discussed once. But see, generally: Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874; Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570; Thies v. St. Louis County, Mo., 402 S.W.2d 376; Ballard's Estate v. Clay County, Mo., 355 S.W.2d 894. We do note the Opinion of the Attorney General, No. 20, March 16, 1961, to the effect that the trustees of a County Health Center, organized under Chapter 205, RSMo 1959, V.A.M.S., had no authority to borrow money from a bank before its first revenues were received, but should proceed in the manner provided by statute, issuing vouchers to the county court and requesting that court to issue tax anticipation notes as provided by Section 50.070 and payable out of the health center tax levy. There is no authority whatever in our statutes which would permit the hospital to endorse these notes with recourse.

■ Plaintiff, in various places, refers to the liability of the defendants (plural); the only individual defendants remaining are the hospital trustees; plaintiff has not, in any manner, briefed their individual liability as distinguished from that of the hospital. They did not endorse the notes, either as individuals or on behalf of the hospital, and they received no consideration.

We have held that the hospital is not liable on count 1, and the same result follows as to those individuals.

■ Plaintiff's second, and alternative, count is said to be based upon the assumption that the "contract" is void. The count is said to constitute an action for money had and received; the theory is that defendant hospital received plaintiff's money for the purchase of the endorsed notes, that certain sums remain unpaid on the notes, and that it is "inequitable" for the defendants to retain the sum of $26,404.35 "of the purchase price." We have not been told what the purchase price was, nor what was the total of the face amounts due on the notes when purchased; we are told that the amount stated is the balance which remained due on the notes as of December 31, 1964. Many of the notes were dated in 1964, and were payable in instalments over a period of 12 or 24 months. On many, payments had been received in 1965. We can only assume that plaintiff got tired of trying to collect on the notes and decided to sue the hospital upon a claim of secondary liability. The mere fact that plaintiff could not or did not collect all the notes does not create an "inequity." The hospital is holding no specific property or money of plaintiff; whatever was received for the notes has admittedly been used long ago in its operations. A repayment now would come out of taxpayers' monies. We do not yet understand why plaintiff originally alleged that the notes were payable to the hospital and were endorsed by it, but later shifted (as was necessary) to the allegation that the notes were drawn *payable to plaintiff*, as they show on their faces.

The agreement attached to plaintiff's petition as an exhibit does not provide for repayment by the hospital. If it had, it would have been ultra vires. The theory of plaintiff seems to be that of recovery on an implied contract to return the money, but *when, why, and upon what contingency*, is not alleged. Yet it pleads and appears also to rely upon the express written con-

tract and the endorsements, all of which is not consistent with a suit for money had and received. The petition seems to us to allege a completed sale of the notes to plaintiff with no strings attached, except for the endorsement of the hospital which we have held to be void. When we thus eliminate the effect of the endorsement, it is most difficult to see even an implied agreement to repay.

■■■■ The cases involving actions for money had and received are not entirely clear or wholly consistent. Essentially, such a suit is one for unjust enrichment, and it partakes to some extent of equitable principles, though not strictly such an action. It is not a suit upon express contract but upon an implied contract created by law. Eichenberg v. Magidson's Estate, Mo.App., 170 S.W.2d 105. The cause of action supposedly supplies a defect in a legal remedy, but the majority of the authorities hold that it is not effective to overcome or evade a policy which makes a transaction void because it is ultra vires or illegal; in other words, a plaintiff may not recover upon an implied contract for money had and received in such a situation, even though a benefit has been received by the defendant. Donovan v. Kansas City, Banc, 352 Mo. 430, 175 S.W.2d 874; Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570; Thies v. St. Louis County, Mo., 402 S.W.2d 376; Bride v. City of Slater, Mo., 263 S.W. 2d 22; Grauf v. City of Salem, Mo.App., 283 S.W.2d 14; Elkins-Swyers Office Equipment Co. v. Moniteau County, 357 Mo. 448, 209 S.W.2d 127; McQuillin on Municipal Corporations, 1966 Rev., Vol. 10, § 29.10. In Donovan, supra, various suppliers had furnished meats, groceries, and other perishable products to Kansas City upon oral request, and without compliance by the city with statutory and charter requirements of writing and certification, etc. for such purchases. The goods had long ago been consumed, and the totals ran into the hundreds of thousands of dollars ($97,-562.47 in the specific case presented). The court held that the agreement to furnish

the goods was ultra vires and void, that plaintiff could not waive the contract and recover in tort as for conversion since the very foundation of the claim was a prohibited contract, and that plaintiff could not recover for "unjust enrichment" or implied contract because the cases involving that theory "deny a recovery for a benefit received under an ultra vires contract prohibited by positive law." (Citing many authorities.) The other authorities cited by us reach the same conclusion. In our case the hospital, a public county institution, was forbidden by law from incurring any obligation on such notes.

Both plaintiff and defendants cite the case of Ballard's Estate v. Clay County, Mo., Div. One, 355 S.W.2d 894. Defendants cite it as holding that an agreement in writing by the County to let the deceased live in the county home upon payment of $10,000 was void. The decedent paid the money, lived there for three years and died. The agreement provided that if he died there the county should retain all the money, but that, if he became dissatisfied and left, the county should deduct the cost of his care and return the balance to him. It appeared that he was well able to pay for his support, there or elsewhere. The Court held that the contract was illegal and void, because the county could not operate as an "inn or nursing home," and that the authority of the county to contract was only such as was conferred by law. Plaintiff cites the case as authority for a recovery as for money had and received. The Court did hold that the county obtained the money without authority of the law, independent of any statute, and that it must restore the balance over and above the cost of keeping the deceased. We believe there are distinctions between that case and ours. In Ballard, there was a continuing contract for care, which was separable. If (as held) the contract was void and the $10,000 had not all been used for decedent's care, then the county obviously held some of the decedent's money. In our case there was a completed contract of sale and a de-

livery of notes, for some definite and specified consideration; on the allegations of plaintiff the contract of sale was completely performed and, with the void endorsement eliminated, plaintiff had full title to the notes with no recourse upon the hospital, legal or moral, so far as our record shows. The only claim of liability for indemnity which we find would rest in the void endorsement. Even the amount of claimed liability is most vaguely computed, as being apparently the total due on all notes as of a fixed and prior date, with no statement of the amount originally paid as the consideration.

We do not consider that the Ballard case is applicable here on its facts; if it is deemed to be, it would in our opinion be in conflict with the Donovan case, supra, which, as an In Banc decision, is controlling. From a different point of view, the allegations of count 2 may well be considered as a mere repetition of the action upon the endorsement. It alleges the endorsement, the sale "with recourse" and the purchase prior to maturity. And, in any event, under the decision in Donovan, supra, the illegal (or ultra vires) transaction cannot be evaded by permitting a recovery upon a theory of "implied" rather than express contract. As such an action it would be wholly futile.

The other cases cited by plaintiff are not sufficiently in point to require discussion. For instance, Lively v. Ridgewood Const. Corp., Mo.App., 371 S.W.2d 658, involved the return of a deposit, made to be used upon specified conditions which were never fulfilled.

What we have said with reference to the trustees in discussing count 1 is also applicable here. Their individual liability is not argued by plaintiff. They received no money from plaintiff, and no reason for liability on their part is demonstrated.

The judgment dismissing both counts of the third amended petition is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.